**In re The FINAL TOUCH BOUTIQUE, INC., a Florida Corporation, Debtor.**

**FEDERATED STORES REALTY, INC., a Delaware Corporation, Plaintiff,**

**v.**

**The FINAL TOUCH BOUTIQUE, INC., a Florida Corporation, Defendant.**

**Bankruptcy No. 80–01074–BKC–JAG. Adv. No. 80–0237–BKC–JAG–A.**

United States Bankruptcy Court, S. D. Florida.

Oct. 23, 1980.

Jay Solowsky, Martin Engels, P.A., Miami, Fla., for plaintiff.

Richard W. Smith, Fort Lauderdale, Fla., for debtor.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

This matter was tried before the court on October 9, 1980 on the plaintiff–landlord's complaint for modification of stay in order that it might complete its state court eviction suit or for adequate assurance (C. P. No. 1) and on the defendant–debtor's answer and affirmative defenses thereto (C. P. No. 3).

Plaintiff Federated Stores Realty, Inc. was the developer and owner of a mall–type shopping center (Broward Mall) in which the defendant–debtor, The Final Touch Boutique, Inc., was a tenant. At all times pertinent the plaintiff managed the shopping center and continues to manage it and has complete power of attorney and authority to bring suits in its own name even though the shopping center has been sold to Prudential Insurance Company of America which has been added as a co-plaintiff (C. P. No. 19 and C. P. No. 20).

The defendant–debtor is a seller at retail of ladies' handbags, costume jewelry and other accessories for ladies' wear. It had been in business since late 1975 in Hollywood Mall, another shopping mall in Broward County, Florida, which apparently caters to a less affluent clientele. In 1978 it became one of the original tenants of the Broward Mall which is near a more affluent suburb of Fort Lauderdale. The debtor has been operating under a lease to expire July 31, 1987 (Plaintiff's Exhibit No. 1). It still operates its unit at the Hollywood Mall where the corporate office and headquarters of the defendant are located.

Sometime prior to March, 1980, the debtor–tenant began experiencing problems with its unit in the Broward Mall. In March its officers discussed these problems with Paul Willcox who had recently been made manager of the Broward Mall by the plaintiff–owner, Federated Stores Realty, Inc. Up to that point the defendant had been paying its basic minimum rent each month but had never produced enough volume of business to go into percentage rent (over and above basic minimum).

In the discussions with Willcox, proposals were made that the entrance way to the defendant's store be redesigned, that the interior of the store be made smaller, and that the rest of the premises be converted into the corporate offices and headquarters where the two officer–stockholders of the debtor would be located, because one of Mr. Willcox's theories was that on–site management made for a better operation. The testimony of the witnesses differed as to whether the expense of such renovations was to be borne by Federated or Final Touch, but we need not resolve this dispute because, instead of pursuing this line of action the debtor began seeking a purchaser who could be approved by Federated and who might pay a reasonable value for the assignment of lease and whatever leasehold improvements the tenant owned.

Soon after, Final Touch ceased paying its rent, and was $2,390.18 in arrears as of May 31, 1980. It did not pay the monthly rent due in June 1980, and has not paid any rent for any subsequent month to the date of trial.

During this period of time, the tenant was negotiating with a retail establishment known as Legends but Legends could not get its operation approved by Federated since its business was different from that permitted under the lease, (Plaintiff's Exhibit No. 1). Thereafter the defendant–tenant began negotiating with a retail business by the name of Ronna's whose merchandise was more in keeping with that permitted under the lease. Throughout the time it was negotiating with prospective purchasers, Mr. Willcox assured Final Touch that Federated would give it a chance to negotiate a sale to a new tenant and that if the landlord entered into a satisfactory arrangement with the new tenant all arrearages in rent would be forgiven

and Final Touch could retain for itself the proceeds of any sale it was able to make.

Federated had put the tenant and Ronna's in touch with each other, and had approved of Ronna's as a successor tenant, after both a representative of Federated's corporate headquarters and Mr. Willcox investigated Ronna's and observed its operations in another mall. However, in Federated's discussions with Ronna's the landlord made clear it would issue Ronna's a new lease at a higher rental, and would not permit the assignment of Final Touch's lease.

Its lease at that time not having been terminated, Final Touch apparently went into the negotiations with Ronna's believing that one of the assets it was selling was its lessee's interest in its lease. The evidence is contradictory as to whether a deal was struck with Ronna's for assignment of the lease. Mr. Casale, president of Final Touch, testified that he had been negotiating with Ronna's at an $80,000 figure but that when it became apparent that a new and different lease would be required by Federated, the purchase price offered by Ronna's was reduced to $25,000. Mr. Hellman, the representative of Ronna's, testified that Ronna's knew all along it could not take an assignment of Final Touch's lease. He stated that the defendant asked $40,000 for the capital improvements on the premises, and Ronna's offered $25,000.

On July 29, 1980, near the end of negotiations with Ronna's, the landlord sent a letter giving notice of default to the tenant (Plaintiff's Composite Exhibit No. 2). This elicited a telephone call from Mr. Casale to Mr. Willcox during which Mr. Willcox assured Mr. Casale that this notice of default was a formality only, required by the headquarters in Cincinnati and further assured Mr. Casale that if he could complete his negotiations with a purchaser acceptable to Federated, Federated would stick to its original offer to let Final Touch keep the entire proceeds of the sale and be forgiven the arrearages in rent.

In the notice of default (Plaintiff's Composite Exhibit No. 2) the tenant was given seven days to cure the alleged defaults or deliver possession of the premises. Section 16.01(a) of the lease (Plaintiff's Exhibit No. 1) sets forth that the tenant shall have ten days after written notice to cure such alleged default. The tenant received the notice of default on July 30, 1980 as reflected by the receipt made part of Plaintiff's Composite Exhibit No. 2.

Thereafter on August 5, 1980, Federated sent the defendant–tenant a notice of termination of lease which was received by the tenant on August 6, 1980, (Plaintiff's Composite Exhibit No. 3). We need not determine whether the less than ten day interval between the notice of default and the notice of termination of lease is of any legal consequence herein because the tenant never at any time up to the time of the trial in this cause paid or tendered any portion of the past due or current rent, and for the other reasons set forth below.

Shortly after receipt of the notice of termination of the lease, Mr. Casale again telephoned Mr. Willcox complaining that the notice of termination was, in effect, a breach of the assurances which Mr. Willcox had given to Mr. Casale concerning the notice of default. Mr. Willcox against assured Mr. Casale that if negotiations with Ronna's could be completed and a transaction consummated in the immediate future, Federated would stick by its commitment to allow Final Touch to keep all the proceeds of such sale and be forgiven the existing arrearages in rent. However negotiations with Ronna's did not go forward and no transaction was ever consummated.

Thereafter on August 12, 1980, Federated instituted a complaint in the County Court in and for Broward County, Florida to recover possession of the premises. Prior to filing its defensive pleadings with respect to such eviction action, the defendant, Final Touch, filed its voluntary petition in this court under chapter 11 of the Bankruptcy Code. The bankruptcy proceeding stayed the state court action under 11 U.S.C. § 362(a)(3).

In the main proceeding, Case No. 80–01074, the debtor has proposed a plan of

reorganization that is predicated on the sale and assignment of its lease to International Confirmers and Financiers No. 2, Inc. with whom it commenced negotiations in late August or early September, 1980 for the assignment of the lease and the sale of certain leasehold improvements belonging to the debtor. (C. P. No. 10). The debtor in the main proceeding also made an application for sale of assets and transfer of lease (C. P. No. 11, Case No. 80–01074) which Federated, the plaintiff in this adversary proceeding, moved to strike (C. P. No. 13, Case No. 80–01074). The motion of Federated to strike the application for sale of assets and transfer of lease to International Confirmers and Financiers No. 2, Inc. and the application itself were set for hearing at the time of trial of this adversary proceeding on October 9, 1980.

Further findings of fact are not required in light of the resolution of this adversary proceeding. However, the following findings are set forth in the event these facts issues come before this court pursuant to the reservation of jurisdiction contained in the Final Judgment entered this date.

At the October 9, 1980 hearing and trial, the following facts concerning International Confirmers and Financiers No. 2, Inc. were established: The corporation has identical ownership and management with two other separate closely held family corporations, one of which operates a store in the Omni Mall as part of the Omni Hotel and shopping complex near downtown Miami, Florida and the other a store on the Lincoln Road Mall in Miami Beach, Florida. Mr. Daswani the principal entrepreneur of International Confirmers and Financiers No. 2, Inc., testified that he intended to make beneficial and expensive leasehold improvements to the Broward Mall property, and stock the store with high quality handbags and fine jewelry as well as costume jewelry and other high quality, high fashion ladies' accessories. He testified to the successful operation of the sister corporations in Omni Mall, and on Lincoln Road Mall. No percentage rent is included in the Lincoln Road Mall lease, but percentage rent above the minimum is being paid at the Omni store.

Mr. Daswani further testified that the new corporation which would operate in the Broward Mall, if approved, would be funded through an investment of $100,000 and a bank loan of $100,000 for which he had already applied but which had not yet been approved.

In 1978, the group comprising the ownership and management of International Confirmers and Financiers No. 2, Inc. had inquired of Federated whether or not it might be considered as a tenant of Broward Mall at the time Broward Mall was preparing to open. The inquiry was put off by Federated and never followed up.

Mr. Willcox testified that in reviewing International Confirmers for Federated, as a potential successor to Final Touch he felt that the lines of merchandise proposed to be carried by them were too high–styled and high–priced for the clientele of Broward Mall and would not be a complementary sales unit for the overall shopping mix carefully planned for Broward Mall. Mr. Daswani of International Confirmers and Financiers No. 2, Inc. testified that from his experience and knowledge of the locale, the merchandise he proposed to carry would be very saleable and complementary to the shopping mix in Broward Mall. No other expert opinion on this subject was offered by either side.

Mr. Willcox also testified that he had made inquiry of the other landlords of the sister corporations of International Confirmers and Financiers No. 2, Inc. and had received negative reports. The court is aware of the hearsay and highly suspect nature of this evidence and it is accepted not for the truthfulness of what was told to the Federated employees by the other landlords, but only for the fact that this was taken into consideration by Federated in refusing to permit the assignment of the lease to International Confirmers and Financiers No. 2, Inc. or to make a new lease with it.

Following the trial plaintiff filed a request for an expedited supplementary hearing based on facts occurring after the

trial as recited in the affidavit of Paul Willcox and related exhibits (C. P. Nos. 22 and 24). We need not consider those facts since the resolution presently reached in this adversary proceeding must be based upon the facts existing on August 21, 1980, the date upon which the voluntary petition in the main case was filed.

Counsel for both parties have done an excellent job in presenting the facts for the court's consideration and in bringing to the attention of the court the law which each asserts is applicable to these facts through the memoranda that have been filed herein.

Plaintiff in its memorandum suggests four issues for determination by this court in the adversary proceeding, the resolution of any one of which in favor of the plaintiff landlord would result in a judgment for the landlord on its complaint to modify the stay to permit the landlord to complete its state court eviction action or for adequate assurance.

The first point made by plaintiff is that the lease terminated prior to the filing of the chapter 11 petition by the debtor on August 21, 1980 (Case No. 80–01074 in this court). The plaintiff's position is that no lease was in existence on August 21, 1980 to which this court's jurisdiction could attach and this would preclude application of the automatic stay provisions of § 362 to the facts of this case. Federated also argues that the termination of the lease depends upon the law of the state and urges that under the law of Florida termination of the lease was automatically complete upon the failure of the tenant to cure the defaults within ten days of the tenant having received the notice of default (Plaintiff's Composite Exhibit No. 2).

11 U.S.C. § 365 authorizes a trustee to assume unexpired leases of a debtor, and, among other provisions, prescribes the conditions under which the trustee or debtor–in–possession may assume, where a default has already occurred. Section 365 includes all "unexpired" leases. It seems clear however that a duly terminated lease cannot be assumed, regardless of the original term of the lease. We agree with plaintiff that reference must be made to state law in concluding whether or not a valid leasehold interest exists for the trustee to assume under § 365 and which would trigger the automatic stay of § 362(d). However, we disagree with plaintiff that under Florida law the terms of a lease can be self–actuating so as to terminate a lease and prevent its inclusion as an asset of the bankruptcy estate. While under certain circumstances bankruptcy courts have found leases to have been terminated, e. g., *Sarasota–Manatee Airport Authority v. Racing Wheels, Inc.*, 5 B.R. 309, 6 B.C.D. 719 (Bkrtcy.D.C.M.D.Fla.1980), at other times the leases were found to be still valid, e. g., *In re Fountainbleau Hotel Corporation*, 515 F.2d 913 (5th Cir. 1975). We cannot agree that the defendant–tenant has absolutely no defenses which might preclude a judgment under Florida law that the lease was not terminated prior to August 21, 1980, especially since forfeitures of leases are looked upon with such disfavor by the law. Cf. e. g.; *Tollius v. Dutch Inns of America, Inc.*, 244 So.2d 467 (Fla. 3rd D.C.A. 1970), appeal dismissed, 247 So.2d 437. The tenant might establish and prevail upon the affirmative defense of waiver of timely rental payments and estoppel by reason thereof based upon the discussions which were taking place between the duly authorized agents of both the plaintiff–landlord and defendant–tenant prior to the bringing of the state court eviction action. Or there may be estoppel by reason of the landlord's refusal to permit assignment of tenant's lease to Ronna's at a time before any notice of default had been sent. There has been no adjudication of these issues by the state court since the filing of these proceedings intervened and stayed further progress in that action.

Therefore we conclude that the plaintiff ought to be permitted to complete its action in state court and from that court obtain a determination of whether or not the subject lease had been terminated prior to August 21, 1980 and is therefore not within the jurisdiction of this court. If the plaintiff prevails in that action, then all

other issues before us are moot. If the defendant–debtor prevails in that action then this court will enter an appropriate order based upon the application for sale of assets and transfer of lease, the motion to strike and evidence already presented.

It is not necessary for us at this time to address the other three issues raised by the plaintiff: the constitutionality of the applicable provisions of the Bankruptcy Code; whether or not the debtor's petition was filed in bad faith; and whether or not the debtor can meet its burden of providing adequate assurance to the landlord.

Pursuant to B.R. 921(a) a separate Judgment incorporating these Findings and Conclusions is being entered this date.