In re CHUCK WAGON BAR–B–QUE,
INC., Debtor.

MARRIOTT CORPORATION, Plaintiff,

v.

CHUCK WAGON BAR–B–QUE,
INC., Defendant.

Bankruptcy No. 80–00310.

Adversary Proceeding 80–0055.

United States Bankruptcy Court,
District of Columbia.

Nov. 5, 1980.

Schwalb, Donnenfeld, Bray & Silbert, Allan Farber, Washington, D. C., for plaintiff Marriott.

Richard Gins and Brian Seeber, Greenbaum & Gins, P. C., Washington, D. C., for defendant Chuck Wagon.

## MEMORANDUM OPINION

(Complaint for Relief from Automatic Stay)

ROGER M. WHELAN, Bankruptcy Judge.

This adversary proceeding involves a complaint filed by the plaintiff, Marriott Corporation, a sub–lessor, for relief from the automatic stay provisions of Section 362 of the Bankruptcy Code.[1] The debtor–in–possession and defendant in this adversary proceeding, Chuck Wagon Bar–B–Que, Inc., leased its business premises located at 707 14th Street, N.W., from the Marriott Corporation pursuant to a sublease dated September 16, 1977, and, as a result of a lease forfeiture originating in 1979, a landlord and tenant proceeding was instituted in the D. C. Superior Court in Landlord and Tenant Action 24417–80, and summary judgment was granted to the plaintiff Marriott Corporation on June 27, 1980. Marriott now seeks from this court a modification of the stay in order to proceed with eviction of the defendant, the debtor–in–possession, in

---

1. In relevant part, 11 U.S.C. § 362(a)(2) provides, inter alia, that:

"(a) Except as provided in subsection (b) of this section, a petition filed under 301, 302, or 303 of this title operates as a stay, applicable to all entities, of ---

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;"

this pending Chapter 11 case. The issues were tried in a preliminary hearing[2] before the court on September 2, 1980, and upon the evidence presented, the court entered judgment for the plaintiff Marriott Corporation. *See* court order dated September 2, 1980.

The relevant facts are essentially not in dispute and are set forth as follows:

1. The plaintiff, Marriott Corporation, leased commercial premises at 705 through 707 14th Street, N.W., from K & K Properties, Inc., pursuant to a lease agreement dated March 6, 1950. Plaintiff's Exhibit 9.

2. In turn, the subject premises located at *707 14th St., N.W.* were sub-leased to the defendant, debtor-in-possession, pursuant to a lease agreement dated September 16, 1977. Pursuant to the terms of the sub-lease, the defendant was obligated to pay a specific monthly rental, and, in addition thereto, a percentage of gross sales, as defined in the lease agreement. The minimum monthly rental payments based on this lease agreement were to be in the amount of $2,465.55 per month. *See* Exhibit No. 9 to Plaintiff's Exhibit No. 4 (sublease between Marriott and Chuck Wagon; letter dated August 23, 1978, from Marriott to Chuck Wagon).

3. The defendant and debtor-in-possession, Chuck Wagon Bar-B-Que, failed to make the required monthly rental payments, and, in addition, failed to provide Marriott with a certified accounting as to gross monthly sales through the lease year November 30, 1979, as specifically required by the sub-lease agreement.

4. Based on the failure to pay the required rent[3] and because the defendant was unable to comply with the specific provisions of the lease requiring a submission of a certified statement of gross monthly sales, the plaintiff gave written notice of termination of the lease on March 17, 1980, and said termination was to become effective on March 20, 1980. *See* Exhibit No. 4 to Plaintiff's Exhibit No. 8, Sub-lease, ¶ 4.2.

5. On June 27, 1980, the D. C. Superior Court entered summary judgment for possession in favor of Marriott Corporation against the defendant Chuck Wagon and entered a money judgment in the amount of $18,254.31 plus post-judgment interest and costs of collection, including attorneys fees, the latter amounts to be determined by the D. C. Superior Court at a later hearing. Plaintiff's Exhibit No. 7.

6. At no time, either in connection with its notice to the defendant, Chuck Wagon Bar-B-Que, or during the litigation between Chuck Wagon and Marriott in D. C. Superior Court, did the plaintiff Marriott, in any way, evidence any intention to waive any of the provisions of its lease, particularly those dealing with termination rights.

7. In connection with its court order of June 27, 1980, the D. C. Superior Court specifically found, *inter alia*, that the lease had terminated on March 20, 1980, and that, therefore, any rights of redemption were no longer available. *See* Plaintiff's Exhibit 8, pp. 12, 26–28.

8. The defendant debtor-in-possession filed its petition under Chapter 11 of the Bankruptcy Code on July 29, 1980, and has continued its operations since that date.

9. Although evidence has been presented that the July and August rent has been tendered to the plaintiff, Marriott Corporation, there has been no tender of the past accrued rent for which judgment was en-

---

**2.** The plaintiff's complaint was filed on August 11, 1980, and, by order of court, the preliminary and final hearings were ordered consolidated for trial hearing on September 2, 1980. Upon the defendant's motion for reconsideration of the order of consolidation, filed on August 22, 1980, this court set the preliminary hearing on September 2, 1980, and the final trial hearing on October 8, 1980. However, because the court found, in connection with the preliminary hearing, that there was no reasona-

ble likelihood that the defendant would prevail at the final hearing, all matters were determined at this preliminary stage.

**3.** As of the filing of the Landlord and Tenant action on March 20, 1980, there was accrued annual minimum rent in the full amount of $18,254.00 for the period September 15, 1979 through March 19, 1980. *See* Exhibit No. 1 to Plaintiff's Exhibit No. 4 (affidavit of Myron D. Walker).

tered by the D. C. Superior Court in the amount of $18,254.31.

10. There is no satisfactory evidence that the defendant, Chuck Wagon Bar–B–Que, at any time, could comply with the specific lease requirements dealing with a certified statement of gross monthly sales. In fact, Mugman and Reid, certified public accountants, in response to defendant's request for an audit of the latter's gross sales for the period of March 30, 1979 to November 30, 1979, stated:

"Due to the condition of the accounting records my opinion would be limited to the probability that the gross sales during that period of time were less than, equal to or greater than, the gross sales upon which the Chuck Wagon Bar–B–Que, Inc. would not be liable for rent in excess of the minimum rent as provided by the lease for that time period." Defendant's Answer filed September 2, 1980, Exhibit A.

11. The defendant's gross sales for the period August 1 through August 31, 1980, were in the full sum of $22,120.06. Although the defendant's president and principal officer, Arthur Drake, testified that there would be a profit for that month, there is no credible evidence of record to establish that the defendant and debtor–in–possession could in any way liquidate the outstanding rental arrears, and make the required payments as specifically mandated and determined by the prior D. C. Superior Court judgment.

12. The record indicates that the cash on deposit totals only $10,490.00.[4] See Schedule B(2)b, filed by the defendant/debtor–in–possession on September 10, 1980.

### CONCLUSIONS OF LAW

■ The primary issues presented for resolution by this court, *vis–a–vis* Section 362 of the Bankruptcy Code, is whether the stay should be modified in order to permit the plaintiff/landlord to proceed with eviction proceedings in the D. C. Superior Court. The overwhelming evidence of record mandates modification of the stay in this proceeding, not only because the continued occupation of these premises by the lessee would further prejudice the landlord, but also because there is no evidence in the context of this Chapter 11 case that the landlord can receive "adequate protection."

Based on the final judgment of the D. C. Superior Court (see Plaintiff's Exhibit No. 9, court order dated June 27, 1980), no leasehold interest existed at the time of the filing of the Chapter 11 petition on July 29, 1980. Accordingly, there was no interest in property for the debtor to protect pursuant to the stay provisions. Debtor–in–possession relies on *Trans–lux Radio City Corp. v. Service Parking Corp.*, 54 A.2d 144 (1947) which held that:

"... a court ... may relieve a tenant from forfeiture of his lease for nonpayment of rent by permitting him before or after judgment, so long as he is in possession, i. e., before 'execution is executed,' to pay the rent due, with interest and costs. Upon this being done, a final stay of proceedings is ordered." 54 A.2d at 146.

This reliance is, however, misplaced because such a right only exists where there is an underlying leasehold interest to protect and where the landlord's action has been instituted for the non–payment of rent. As stated in 51 C.J.S. *Landlord and Tenant* § 110, at 351:

"As a general rule, payment of the rent, or a valid unconditional tender of rent due, after the time when rent is due, but before a forfeiture has been declared precludes the right of the lessor thereafter to terminate the lease because of the failure to pay rent on the day when it is due."

In this proceeding, the facts clearly demonstrate that the leasehold interest was properly forfeited by reason of the existing de-

4. It should be noted that in connection with a hearing on October 8, 1980, on defendant's motion for a stay pending appeal, relief from the stay was denied because the defendant could not make the required monthly payments on time as required by the lease and by this court's order of September 2, 1980.

fault and subsequent, timely notice by the landlord. Clearly, the landlord had a right to terminate the lease in connection with the persistent defaults, and, further, because of the defendant's failure to comply with specified conditions of the lease, and proper notice of default was given in connection with the termination of such lease. *See Camalier & Buckley–Madison, Inc., v. Madison H. Inc.*, 513 F.2d 407 (D.C.Cir. 1975). Accordingly, on June 27, 1980, the lease had already been terminated and the court properly entered an outstanding judgment for accrued rent in the aforesaid amount of $18,254.31 due through March of 1980.

Based on that fact, the debtor in this Chapter 11 case has no rights to assert under the Bankruptcy Code. Specifically, the right of a debtor–in–possession to "cure, compensate and assure" pursuant to Section 365(b) of the Bankruptcy Code is nonexistent. *See Second and E Streets N.E., Associates, v. Aries Enterprises, Limited and the District of Columbia, (In re Aries Enterprises, Limited)*, 3 B.R. 472 (Bkrtcy., B.C.D.C.1980). While it is true that courts are loathe to recognize forfeiture, particularly in the context of a viable Chapter 11 reorganization case, where the landlord has taken the proper steps to terminate the lease and where there are no equitable factors to warrant a redemption of the tenant's rights, termination would appear to be entirely proper. *Molyneaux v. Town House, Inc.*, 195 A.2d 744 (D.C.1963).

As in *Aries, supra*, the court has noted, based on the evidence of record, that a cure and compensating is not available to the lessee under Section 365 and would clearly not be possible. *See Findings, infra*. The only rent tendered to the landlord in connection with this proceeding was the August rent; clearly, this is not a sufficient curing. Moreover, and more relevant to the holding of this court, there is no valid leasehold agreement upon which the tenant could assert his rights under this section of the Code. Under no circumstances, based on the evidence adduced by the defendant himself, could the landlord receive adequate protection within the meaning of Section 361 of the Bankruptcy Code.

There clearly must come a point in time when the parties to a lease are entitled to legitimate expectation of finality in connection with their business dealings. It is clearly inequitable to permit a debtor to attempt to cure and remedy a contractual obligation that has already expired. To permit a debtor to assert rights under an already expired lease by resort to the equitable provisions of the Bankruptcy Code would undermine confidence not only in the certitude of contracts, but in the judicial system itself. Such a result was clearly not envisioned by the framers of Section 365. That section itself clearly relates to and refers to "an unexpired lease of the debtor;" and it clearly envisions that there be an on–going relationship between the landlord and tenant over which the court can properly exercise its jurisdiction.

It is clear to the court, after a careful consideration of all evidence, that there is no likelihood that this debtor would prevail at a final hearing, and, accordingly, the relief prayed for by the plaintiff is hereby granted. See Section 362(e)(1).