**In the Matter of ESCONDIDO WEST TRAVELODGE.**

**Bankruptcy No. 84–663–P11.
Civ. No. 84–2904.**

United States District Court,
S.D. California,

June 19, 1985.

Allan G. Lieb, San Diego, Cal., for appellant.

Dennis J. Wickham, Seltzer, Caplan, Wilkins & McMahon, San Diego, Cal., for appellee.

GORDON THOMPSON, Jr., Chief Judge.

This case comes before this Court on appeal from the U.S. Bankruptcy Court. The appellants, S & M Development and Sam Spizman, appeal a ruling denying their motion for relief from the automatic stay provisions of § 362(a) of the U.S. Bankruptcy Code (11 U.S.C. § 362(a)). For the reasons set forth below, this Court has concluded that the decision of the Bankruptcy court must be REVERSED.

FACTS

The relevant facts underlying this controversy are not in dispute. The controversy arises out of a contract entered into between the parties in April, 1978. Under the contract, appellants promised to build a motel in Escondido, California at a cost not to exceed $1.25 million dollars. Appellants further promised that upon construction they would lease the hotel to appellee, Escondido West Travelodge. In exchange, Escondido promised to pay monthly rent equal to 12% of the construction costs and also to pay an amount equal to the property taxes on the premises.

As it turned out, appellants' actual cost of construction was $1.78 million dollars, well in excess of the agreed maximum cost of $1.25 million dollars. This cost overrun generated disputes between the parties as to both the amount of rent and the amount of property taxes owed under the agreement. Appellee took the position that the rental and property tax payments should be based on the agreed construction cost; appellants argued, to the contrary, that the payments should be based on the actual construction cost.

The dispute as to the amount of the rental payments was resolved in August, 1981, when judgment was entered in San Diego Superior Court to the effect that rental payments were to be based on allowable construction expenses of $1,390,000. The dispute as to the amount of property tax payments, however, has never been completely resolved. The property tax dispute precipitated a series of proceedings in state court and, eventually, the instant appeal.

The state court litigation concerning the property tax dispute commenced on April 15, 1983, when appellants, pursuant to California Code of Civil Procedure § 1161(3), served upon appellees a notice for breach of the covenant to pay property taxes. The notice included an election of forfeiture. After receiving no response to their notice, appellants, on May 7, 1983, filed a complaint for unlawful detainer pursuant to California Code of Civil Procedure § 1166.

At the ensuing trial of the unlawful detainer action, the only contested issue was whether the amount of property tax payments should have been based on the allowable or actual costs of construction. After hearing two days of testimony on this issue, the state court judge ruled for the appellants, finding that the payments should have been based on the actual construction costs. Consequently, on January 9, 1984, the state court entered judgment, pursuant to California Code of Civil Procedure § 1174, declaring the lease forfeited.

Shortly after entry of the judgment, appellants obtained the issuance of a writ of possession. The Court agreed to stay execution of the writ, however, pending a hearing on February 14, 1984 on appellee's motion, brought pursuant to California Code of Civil Procedure § 1179, for relief from forfeiture on grounds of hardship.

At the hardship hearing, the state court judge once again ruled for the appellants. In open court, he denied appellee's motion for relief from forfeiture, ruling that appellee had not sustained its burden of showing

sufficient hardship to merit relief. Four hours later, appellee filed the instant Chapter 11 proceeding in federal court.

The effect of the Chapter 11 filing, of course, was to stay any attempt by the appellants to execute on their writ of possession.[1] Under 11 U.S.C. § 362(a)(2), the filing of a petition in bankruptcy operates to stay "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case." Appellants, therefore, sought to have the stay terminated or modified for cause pursuant to the provisions of 11 U.S.C. § 362(d). When the appellant's motion to lift the stay was denied by the Bankruptcy Court on June 20, 1984, 40 B.R. 152, this appeal followed.

DISCUSSION

■ The ultimate issue on this appeal is whether sufficient cause exists under 11 U.S.C. § 362(d) to lift or modify the stay of appellants' state court unlawful detainer action. Appellants contend that sufficient cause is found in the fact that the lease is not assumable by the appellee under 11 U.S.C. § 365.[2] As they correctly point out, if a lease cannot be assumed under § 365, sufficient cause exists to lift a stay of state court proceedings involving that lease. *In re Acorn Investments,* 8 B.R. 506, 510 (Bankr.S.D.Cal.1981).

■ A subsidiary issue on this appeal thus becomes whether the lease in question here is assumable under § 365. An examination of § 365 reveals that a debtor may not assume a lease once it has expired. 11 U.S.C. § 365; *In re Acorn Investments,* 8 B.R. at 510. Expiration, in turn, has been defined by the case law to include termination under state law prior to the filing of a Chapter 11 petition.[3] *In re Acorn Investments,* 8 B.R. at 510; Fogel, *Executory Contracts and Unexpired Leases in the Bankruptcy Code,* 64 Minn.L.Rev. 341, 346 (1980). Thus, in the instant case, sufficient cause exists to lift the stay if and only if the lease here was terminated under state law prior to appellee's filing of its Chapter 11 petition. If the lease was terminated prior to the Chapter 11 filing, the stay must be lifted; if the lease has not yet been terminated, the stay must remain in force.

Although easily enough framed, this pivotal issue regarding the timing of termination is not easily resolved. As the authors of one treatise have observed, "The point of termination is often difficult to ascertain, especially when eviction proceedings have been commenced, but not completed, prior to bankruptcy." B. WEINTRAUB & A. RESNICK, BANKRUPTCY LAW MANUAL § 7.10[1]. This difficulty is due in large part to the fact that, as one of the courts wrestling with the issue of when a lease is terminated noted,[4] "A good

---

1. Apparently the Bankruptcy Court felt that § 362(a) did not operate to stay the filing by the debtor of a notice of appeal in the state court action. A review of the file reveals that a notice of appeal was filed after the filing of the petition in bankruptcy.

2. Section 365 grants a trustee in bankruptcy the power to assume or reject any executory contract or unexpired lease of the debtor. 11 U.S.C. § 365(a). The provisions of this section, including the all-important limitations on the trustee's power to assume a lease, are discussed in greater detail *infra.*

3. By recent enactment, this definition of "expiration" has effectively been incorporated directly into the statute. Section 365(c) now provides that "the trustee may not assume ... any ... unexpired lease of the debtor, ... if ... (3) such lease of nonresidential real property has been terminated under applicable nonbankruptcy law

prior to the order for relief." 11 U.S.C. § 365(c).

4. Several courts have confronted the issue of when a lease is terminated under state law within the meaning of § 365. Among the pertinent cases are *In re Fontainebleau Hotel,* 515 F.2d 913 (5th Cir.1975), *In re Burke,* 76 F.Supp. 5 (S.D. Cal.1948), *In re Foxfire Inn of Stuart Florida,* 30 B.R. 30 (Bankr.S.D.Fla.1983), *In re Cowboys,* 24 B.R. 15 (Bankr.S.D.Fla.1982), *In re Darwin,* 22 B.R. 259 (Bankr.E.D.N.Y.1982), *Executive Square Office Building v. O'Connor,* 19 B.R. 143 (Bankr.N.D.Fla.1981), *In re Acorn Investments,* 8 B.R. 506 (Bankr.S.D.Cal.1981), *In re GSVC Restaurant,* 10 B.R. 300 (Bankr.S.D.N.Y.1980), *In re Chuck Wagon Bar-B-Que,* 7 B.R. 92 (Bankr.D.D. C.1980), *In re Final Touch Boutique,* 6 B.R. 803 (Bankr.S.D.Fla.1980), *In re Mimi's of Atlanta,* 5 B.R. 623 (Bankr.N.D.Ga.1980), and *In re Racing Wheels,* 5 B.R. 309 (Bankr.M.D.Fla.1980).

deal of semantic confusion ... exist[s] in this area ...." *Executive Square Office Building v. O'Connor,* 19 B.R. 143, 146 (Bankr.N.D.Fla.1981).

As this Court sees it, much of the confusion stems from the tendency of the courts to collapse into one concept the two separate concepts of "the time at which a lease is terminated," on the one hand, and "the time at which there is a final judicial determination that a lease is terminated," on the other. Importantly, these two events are not necessarily coincident. It is possible to define termination in such a way that events sufficient to constitute termination of a lease occur long before a court determines that the termination is valid under state law.

Illustrative of this distinction is the case of *Allan v. Archer-Daniels Midland Co.,* 538 F.2d 1260 (7th Cir.1976).[5] In *Allan,* the debtor had entered into four futures contracts for the purchase of commodities. These contracts included clauses allowing the seller to terminate if the buyer's financial condition became "unsatisfactory." *Id.* at 1262. The seller terminated the contracts under these clauses, and ten days later the buyer was adjudicated a bankrupt. The trustee then attempted to assume the contracts. The court held that under state law the termination clauses were valid and indicated that the seller had properly terminated the contracts. Accordingly, "[s]ince the contracts were no longer executory at the time of [the buyer's] bankruptcy, the bankruptcy trustee's purported assumption ... was a nullity." *Id.*

The salient feature of *Allan,* for our purposes, is that the court held that the contracts were terminated as of the time the seller unilaterally took steps to terminate them. Significantly, the court found this termination effective even though there had been no judicial determination by any court that the termination was valid under state law. Indeed, it was not until after the onset of bankruptcy that the *Allan* court, itself, determined that the termination was valid. The court thus implicitly recognized the distinction between "the time of termination of a contract (or lease)" and "the time of a judicial determination that the termination was valid under state law." [6]

▮ Keeping this distinction in mind, then, it remains for this Court to decide when a lease is terminated under California law. After careful consideration, the Court has decided to reject the appellee's contention that a lease is not terminated under California law until there has been a final judicial determination of the validity of the termination. Instead, the Court holds, with regard to the instant case, that if the lease between Escondido and the appellants was validly terminated, it was terminated when the appellants filed their unlawful detainer action in Superior Court. This holding is supported by reference to the landlord/tenant law of California, cases from other jurisdictions, and the policies underlying § 365.

An analysis of California law must begin with an examination of California Civil Code § 1951.2. Under that section, a lease terminates if, among other things, a lessee's "right to possession is terminated by the lessor because of a breach of the lease." Cal.Civ.Code § 1951.2(a). Unfor-

---

5. The issue in *Allan* was whether a contract was executory rather than whether a lease was unexpired. Under § 365(a), however, these two determinations are analogous.

6. A case illustrating this distinction in the lease context is *In re Mimi's of Atlanta,* 5 B.R. 623 (Bankr.N.D.Ga.1980). In *Mimi's,* a landlord had, upon default of a tenant/debtor, "unilaterally terminated the leases on February 6, 1980, as provided in the lease agreements." 5 Bankr. at 625. Shortly thereafter, the landlord had initiated dispossessory proceedings in state court, but these proceedings were immediately stayed by the filing of the debtor's bankruptcy petition. *Id.* The court held the lease terminated as of February 6, 1980, the date the landlord had unilaterally taken steps to terminate it, even though there had been no judicial determination whatsoever that the termination was valid under state law. *Id.* at 628.

tunately, because there are few cases addressing the issue of when a lessee's right to possession is deemed terminated,[7] this issue has not been expressly resolved under California law. But in the Court's view, the most appropriate interpretation of those cases that do address the issue, albeit tangentially, is that a lessee's right to possession is deemed terminated as of the time the landlord files his unlawful detainer action.[8]

This proposition was stated in *dictum* in the case of *Grand Central Public Market v. Kojima,* 11 Cal.App.2d 712, 54 P.2d 786 (1936). In *Central Public* the California Court of Appeals held that, although a lease is not automatically terminated when the lessor serves upon the lessee a notice to pay rent or quit, it is terminated when "the notice is acted on by one of the parties." 11 Cal.App.2d at 717. The Court then indicated that an unlawful detainer suit brought by the lessor and based on the notice to quit would constitute such action by the parties.[9] This *dictum* in *Central Public* was in accordance with the holding of an earlier Court of Appeals decision in *Neuhaus v. Norgard,* 140 Cal.App. 735, 35 P.2d 1039 (1934). In *Norgard,* the Court of Appeals had affirmed a ruling by the trial judge declaring a lease "terminated" as of the date of expiration of a three-day notice to quit. 140 Cal.App. at 737.

Appellee's attempt to argue, to the contrary, that a lease is not terminated under California law until there has been a final judicial determination of termination is not persuasive. The two California cases it cites in support of its position—*Pellissier v. Title Guarantee and Trust Co.,* 208 Cal. 172, 280 P. 947 (1929) and *Ramish v. Workman,* 33 Cal.App. 19, 164 P. 26 (1917)—are simply not germane to the issue at hand. In both cases, the courts addressed an issue concerning the *res judicata* effect of a judgment entered in an unlawful detainer action. Both courts merely adopted the general rule of law in the area of *res judicata* that a judgment on appeal is not considered "final" and therefore does not act to bar a subsequent action. *Pellissier,* 208 Cal. at 183–84, 280 P. 947; *Ramish,* 33 Cal.App. at 20–21, 164 P. 26. Neither case purported to determine at what point a lease is deemed terminated under state law.

A review of the federal court cases that have considered the issue of when a lease is terminated within the meaning of § 365 further undermines the appellee's contention that a lease should not be deemed terminated under California law until there has been a final judicial determination of the validity of termination. Several federal courts have held a lease terminated, within the meaning of § 365, even though a state court has not yet rendered a

---

7. This dearth of case law is probably because in the typical unlawful detainer action in state court very little hinges on the precise time at which a lease is deemed terminated. Under § 1951.2(a), a lessor can recover not only unpaid rent that had been earned prior to the termination (Cal.Civ.Code § 1951.2(a)(1)), but also unpaid rent from the time of termination to the date of the award (Cal.Civ.Code § 1951.-2(a)(2)). Although § 1951.2(a)(1), unlike § 1951.2(a)(2), limits recoverable damages to those that could not have been mitigated, this difference would normally be inconsequential in the case of termination through an unlawful detainer action. In such a case, holdover by the tenant would normally prevent reletting of the premises.

8. In this opinion, the Court holds that, under California law, a lease is deemed terminated at the time a landlord files an unlawful detainer

action. Even were the Court to hold that the termination occurs at a much later time, however, appellants would nevertheless prevail on this appeal. Under Cal.Civ.Proc. Code § 1174, a lease is deemed forfeited upon entry of judgment by the trial court in favor of the plaintiff in an unlawful detainer action. Moreover, under Cal.Civ.Proc. Code § 1176, an appeal taken by the defendant shall not stay proceedings upon the judgment unless the judge before whom the same was rendered so directs. In the instant case, not only was the lease forfeited under § 1174 prior to the filing of bankruptcy, but the appellants are entitled to immediate possession of the premises by virtue of Escondido's failure to obtain a stay pending appeal.

9. The court also indicated that when there was a judicial determination that the termination was valid, the lease would be deemed "forfeited." *See supra* note 8.

final judgment validating the termination.[10] *See, e.g., In re Foxfire Inn of Stuart Florida,* 30 B.R. 30 (Bankr.S.D.Fla.1983) (lease terminated prior to filing of petition in bankruptcy even though tenant remains in possession as a tenant at sufferance, and the landlord has instituted but not yet concluded an eviction proceeding); *In re Cowboys,* 24 B.R. 15 (Bankr.S.D.Fla.1982) (lease terminated even though tenant might be able to successfully attack state court default judgment on rehearing); *In re Chuck Wagon Bar-B-Que,* 7 B.R. 92 (Bankr.D.D.C.1980) (lease terminated on date of filing of landlord/tenant action); *In re Mimi's of Atlanta,* 5 B.R. 623 (Bankr.N.D.Ga.1980) (lease terminated shortly after dispossessory proceedings were initiated). And it is doubtless the law in all of these jurisdictions, as in California, that a judgment has no *res judicata* effect until it is final.

Finally, and perhaps most importantly, the Court notes that its interpretation of California law regarding the time of termination of a lease within the meaning of § 365 is consistent with the policies underlying § 365. Section 365 grants a trustee in bankruptcy the power to assume or reject any executory contract or unexpired lease of the debtor. The debtor is thus given the best of all worlds: he is permitted to take advantage of any beneficial bargains that he made prior to bankruptcy, while at the same time he is permitted to avoid his more improvident bargains. The statute places the debtor in this enviable position because it is presumed that the ensuing benefit to the debtor (and hence his creditors) will outweigh the corresponding detriment to the party with whom he has contracted.

The debtor's powers under § 365 to assume a lease are, however, subject to at least two important limitations. First, in order to assume a lease under § 365, a debtor must provide the lessor with adequate assurance of future performance under the lease. Through this provision, the statute helps to ameliorate any potential detriment incurred by the lessor as a result of the debtor's decision to assume a lease. Second, as noted above, a lease, no matter how beneficial to a bankrupt tenant, may not be assumed once it has been terminated, regardless of the adequacy of the assurance proffered by the debtor. Through this provision, the statute, in striking a balance between bankrupt tenants and their landlords, permits a landlord to protect himself by taking steps to terminate a lease prior to the onset of bankruptcy. In addition, the statute, through this provision, helps foster confidence in the "certitude of contracts." *In re Chuck Wagon Bar-B-Que,* 7 B.R. at 95. It would be chaotic if every eviction proceeding could ultimately be frustrated by the last minute filing of a Chapter 11 proceeding in federal court. *In re GSVC Restaurant,* 10 B.R. at 302.

In the instant case, defining termination of a lease to occur, as appellee suggests, only when there has been a final judicial determination of the validity of termination, would frustrate the delicate balance struck by § 365. If termination were so defined, a defaulting tenant would be able to initially litigate the effect of his default on the validity of the lease agreement in state court. If he ultimately prevailed in his state court action, he could then effectively assume the lease without being required to provide the assurance required by § 365 and thought essential to protect the interests of the landlord. If, on the other hand, it became clear that the tenant was going to lose in state court, he could, just prior to final judicial resolution of the state court litigation,[11] file for bankruptcy in order to stay the state court

---

**10.** Indeed the Court found only one case in which a court declined to hold a lease terminated because state termination proceedings had not yet been concluded. *See In re Fountainebleau Hotel,* 515 F.2d 913 (5th Cir.1975).

**11.** In the instant case, for example, Escondido filed its Chapter 11 petition just four hours after

a state court judge denied its motion for relief from forfeiture under Cal.Civ.Proc. Code § 1179. Presumably, under Escondido's theory that a lease is not terminated until there has been a "final" judicial determination of termination, it could have waited even longer. Since a state court decision is not final until the U.S.

proceedings and begin anew in federal court. But this would deprive the landlord of the right, afforded him by the statute, to protect himself from the consequences of impending bankruptcy by taking steps to terminate a lease under state law. The landlord would be deprived completely of the ability to terminate a lease because the debtor could interrupt the termination process at any time by simply filing a petition in bankruptcy. In addition, permitting tenants to frustrate eviction proceedings through last minute filings of Chapter 11 petitions in federal court would shake even the most hardened observer's confidence in our system of justice.

■ In sum, then, the Court holds that a lease is terminated under California law when a landlord, after complying with the appropriate statutory notice requirements, files an unlawful detainer action in state court. But this holding creates a problem. To this point, the Court has held only that *if* the lease agreement between the parties was properly terminated, it was terminated when the appellants filed their unlawful detainer action. Unfortunately, however, because there has been as of yet no final judicial determination regarding the validity of the termination, it remains to be decided whether the termination was effective under California law.

■ Two possible approaches to resolving this problem suggest themselves. First, the bankruptcy court could apply state law to determine whether the termination was effective. In other words, the bankruptcy court could essentially decide the merits of the debtor's state court appeal. This approach has been adopted in several cases, including *In re Burke,* 76 F.Supp. 5 (S.D.Cal.1948) (federal court can decide motion for relief from forfeiture under Cal.Civ.Proc.Code § 1179), *In re Mimi's of Atlanta,* 5 B.R. 623 (Bankr.N.D. Ga.1980) (appropriate for federal court to address the question of possession), and *In re Racing Wheels,* 5 B.R. 309 (Bankr.M.D. Fla.1980).

Alternatively, the Court could lift the stay and allow the debtor to proceed with its appeal. Under this approach, the state court would resolve the issue of the validity of the appellants' termination of the lease through the normal state appellate process. This approach was adopted in *In re Cowboys,* 24 B.R. 15 (Bankr.S.D.Fla. 1982) (debtor should raise any defenses to termination of lease in the "appropriate forum," i.e. state court) and *In re Final Touch Boutique,* 6 B.R. 803 (Bankr.S.D. Fla.1980) (landlord permitted to complete its unlawful detainer action in state court).

Each approach has its relative advantages. On the one hand, resolution of the issue of the validity of the termination is likely to proceed more expeditiously in federal court, thus reducing the possibility of delay in the reorganization proceeding. On the other hand, the state appellate court is the more appropriate forum for deciding an appeal from the judgment of a state trial court.

Although it is a reasonably close call, the Court has decided to opt for the second approach and lift the stay, thereby allowing the debtor to proceed with its appeal in the California courts. If the landlord prevails on the state court appeal, then the lease was terminated prior to the onset of bankruptcy and may not be assumed. Any issue in the bankruptcy court concerning the lease would then be moot. If, instead, the tenant prevails on appeal, the lease was never terminated, and the bankruptcy court may resolve any outstanding issues regarding its assumption by the debtor. The decision as to who gets interim possession of the lease pending resolution of the state court appeal will be made by the state courts as a matter of state law.

IT IS SO ORDERED.

