**In the Matter of RACING WHEELS, INC., Debtor.**

**SARASOTA–MANATEE AIRPORT AUTHORITY, Plaintiff,**

v.

**RACING WHEELS, INC., Defendant.**

**Bankruptcy No. 80–174 C.**

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

July 23, 1980.

Don M. Stichter, Tampa, Fla., for Sarasota-Manatee Airport Authority, plaintiff.

David W. Steen, Tampa, Fla., for Racing Wheels, Inc., defendant.

ALEXANDER L. PASKAY, Bankruptcy Judge.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

THIS IS a business reorganization case and the matter in controversy is the right of the Plaintiff, Sarasota-Manatee Airport Authority (the Authority) to evict the Defendant, Racing Wheels, Inc. (the Debtor) from certain premises.

The operative facts controlling the resolution of this controversy, as developed at the final evidentiary hearing can be briefly summarized as follows:

Prior to March of 1978 the General Manager of the Authority negotiated a long term lease with the principal and chief executive officer of the Debtor, William Sandy. It was always understood by the parties that Mr. Wolf had no authority to enter into a binding lease and that any lease negotiated by him would have to be approved by the Authority. It is equally clear from the record that Mr. Sandy was aware from the outset that there was a zoning problem in that the premises sought to be acquired by the Debtor could not be used for the purpose intended by the Debtor, i. e., competitive go-cart racing, and that there would have to be a zoning variance or change in the classification before the Debtor could commence to operate the premises for its intended use as an operation of competitive go-cart racing. According to Mr. Sandy, Mr. Wolf promised to procure the necessary zoning change, but it is clear, and there is no evidence in the record to find otherwise

that, first, Wolf had no power to bind the Authority and second, that Sandy was fully aware of this fact. The fact of the matter is that counsel for the Authority was approached by Mr. Sandy who attempted to retain him in connection with this matter, but who declined the employment precisely because of a potential conflict of interest which may have arisen in the future relating to the zoning problem and the enforcement of the proposed lease against Mr. Sandy if there were a default under the lease because of Mr. Sandy's inability to use the facility as intended.

On May 27, 1978, the lease negotiated by Wolf with Sandy was presented to the Authority for its consideration. According to the minutes of the meeting, Mr. Cy Sherr, an attorney representing 301 Racing, a go-cart enterprise engaged in the operation of a race track, interposed an objection to the proposed lease on several grounds, most importantly, on the ground that the subject land was zoned M–1 which under the controlling zoning ordinance of Manatee County cannot be used for competitive go-cart racing. In spite of this objection, the lease was approved by the Authority. The lease granted to the Debtor an initial term of 25 years; and called for an annual rental of $28,000 payable in equal monthly payments of $2,350.

Paragraph 4 of the Lease entitled "Use of the Premises" provided that the leased premises shall be used solely as a go-cart and skate board facility, including engineering, design, construction, testing, repair and sales of competitive racing of co-carts and skateboards; also to maintain a manufacturing facility *as permitted by applicable zoning* (emphasis supplied). The record further reveals that after the Debtor made considerable improvements to the leased premises, it commenced operating a competitive go-cart track sometime in May of 1978 and continued to operate the facility as such until July of 1978 when it was cited by the County for zoning violations. Mr. Sandy was arrested and put on 6 months probation and the Debtor is still unable to operate the leased premises as a competitive go-cart track.

It is without dispute that the Authority initially sought a change or a variance from the M–1 zoning, albeit, without success. In this connection it should be mentioned that the Debtor filed a suit against the County Zoning Board in the state court where it succeeded to overturn the decision of Zoning Board. The Zoning Board was equally unsuccessful before the Second District Court of Appeals which affirmed the decision of the Circuit Court. The Zoning Board filed a motion for rehearing which is still pending before the Court of Appeals at this time.

In spite of the Debtor's inability to use the leased premises as a competitive go-cart track, it continued to pay to the Authority the monthly rental stipulated in the lease until September of 1978 when it stopped all payments and is still in default. On December 3, 1979, the Authority notified the Debtor in writing that it considered the lease forfeited for non-payment of rent and demanded an immediate surrender of the premises.

The Debtor having failed to cure the default, the Authority filed an eviction action in the Circuit Court of Manatee County. In due course, the Debtor filed its answer which included an affirmative defense.

On February 12, 1980, the Debtor filed its Petition for Relief under Chapter 11 of the Bankruptcy Code and now seeks to obtain rehabilitation under this Chapter. On April 4, 1980, the Authority filed the complaint in which it now seeks relief from the automatic stay provision of § 362 of the Code. 11 U.S.C. § 362. In due course, the Debtor filed its answer in which it generally denied all allegations relating to the cancellation of the lease and the right of the Authority to regain possession of the leased premises. The answer does not contain any affirmative defenses nor did the Debtor file a counterclaim. At the beginning of the trial, the Debtor orally moved to amend its answer and sought leave to file a counterclaim for damages. Both motions were denied, first because of untimeliness and second, because the operative facts of any

potential counterclaim which would be indispensable to a viable claim were known to the Debtor ever since it was cited for zoning violations and the same were, in fact, asserted in the eviction action filed by the Authority. Thus, it is beyond peradventure that there is nothing newly discovered or disclosed and just revealed which would warrant the finding of due diligence since the Debtor had ample opportunity to assert the claim embodied in the proposed counterclaim. In addition, it is well settled that a complaint which seeks a relief from the automatic stay is not really a complaint in the orthodox sense which invokes the rule governing either compulsory or permissive counterclaims. F.R.Civ.P. Rule 13, Bankruptcy Rule 713. This is so because a complaint which seeks a relief from the automatic stay is merely a procedural necessity imposed on third parties who must seek relief from the automatic stay for the purpose of proceeding on the merits in a non-bankruptcy forum. Such a complaint does not constitute a claim within the meaning of Rules 12(b) or 13, F.R.Civ.P. and affirmative defenses and counterclaims can be properly heard only at a trial on the merits. *In re Essex Properties, Ltd.*, 3 B.C.D. 331 (N.D.Cal.1977); *In re Marietta Cobb Apartments Co.*, 3 B.C.D. 720 (S.D.N.Y.1977). This was true, without doubt, under the pre-Code law and there is nothing in the Code itself or in the relevant legislative history which would require a different conclusion.

Turning to the matter in controversy, it should be noted at the outset that it is evidence that the Debtor has no possible defense to the claim for relief asserted by the Authority in its complaint with two possible exceptions.

The first possible defense, although it was not clearly and lucidly articulated by the Debtor either in its answer to the complaint or by its counsel at the time of the hearing, may be based on the proposition that if the lease involved is declared by this Court to have been forfeited and, therefore lost, the chances of the Debtor to obtain rehabilitation through Chapter 11 of the Code would be effectively destroyed.

The second, and the only real defense, urged by the Debtor, although again not really put in issue by the answer, is the contention of the Debtor that it shall be excused from paying rent because the Authority had the obligation to obtain the proper zoning necessary for the operation of a competitive go-cart racing facility and failed to do so and, thus, breached the lease itself. This theory of defense appears to be based on the primary proposition that if a tenant is unable to utilize the leased premises for the purpose intended, it amounts to, as a matter of law, a constructive eviction which in turn would excuse the tenant from paying the rent.

As an alternative theory which may be urged in order to avoid the inescapable fact that the Debtor was, and still is, in default, is the possible claim of economic frustration which, according to the Debtor, would excuse the Debtor's failure to live up to its bargain. Of course, if these propositions are supported by this record, it is clear that the Debtor was not in default; the Authority had no right to declare the lease forfeited, and the lease is still valid and an enforceable legal contract and the Authority has no right to proceed with the action for eviction in the State Court.

Considering the first possible defense to the Plaintiff's complaint, to wit, the self-evident fact that the continuing validity of the lease is indispensable to the economic survival of the Debtor, it is well to note that this point is only valid so long as there is something which could be salvaged but if there is nothing left to salvage, the proposition is legally a non-sequitur. Where under the State laws, the lease has been terminated and the relationship of the landlord and the tenant is annulled by a final state process of eviction prior to the filing of a petition in bankruptcy, no interest exists for a trustee or debtor-in-possession to assume. *In re G.S.V.C. Restaurant Corp.*, 1 C.B.C.2d 991 (S.D.N.Y.); *In re Schokbeton Industries, Inc.*, 466 F.2d 171 (5th Cir. 1972).

*Schokbeton, supra* dealt with the rights of a licensor to terminate a licensing agreement with the Debtor where the petition for arrangement under Chapter XI of the Bankruptcy Act was filed subsequent to the Debtor's receipt of a notice of default for nonpayment of royalties, but prior to the expiration of a 60-day grace period for curing the default. In determining the Debtor's right to injunctive relief which was sought after the expiration of the grace period, Judge Brown speaking for the Court stated that:

> "Debtor's rights under the licensing agreement evaporated upon receipt of the written notice of termination and neither the mere filing of the arrangement petition nor the referee's order purporting to 'extend' the grace period for cure of the default nor a mystical combination of both could effect their recondensation."

Thus, the Debtor must face the inevitable unless one of its so-called equitable defenses is supported by this record and by the controlling legal principles. The first of these defenses, as noted earlier, relates to the proposition urged by the Debtor that because the Authority failed to obtain the necessary zoning change needed for the operation of the facility as a competitive go-cart racing track, the Debtor was discharged from his duty to perform under the lease agreement. However, there is nothing in the record to establish that there was an agreement between the Debtor and the Authority to the effect that the Authority would obtain the necessary zoning changes. Even assuming but not admitting that such a representation was made by Mr. Wolf, he had no ability to bind the Authority and Mr. Sandy was aware of this fact. Furthermore, the lease agreement expressly provides that the use of the leased premises for competitive go-cart racing was subject to the applicable zoning provisions and the lease is silent as to any duty on the part of the Authority to obtain the necessary zoning change. The fact that the Authority sought to obtain a zoning variance is not significant and does not establish the assumption of such an obligation by the Authority, the fulfillment of which was a condition precedent to the Debtor's duty to perform under the lease. Accordingly, the Debtor's contention that it was excused from its obligation to pay rent pursuant to the lease agreement due to the Authority's failure to obtain the proper zoning necessary for the operation of a competitive go-cart racing facility is without merit.

The Debtor's third defense of economic frustration is equally without merit for not only was the risk of failing to procure the necessary zoning changes foreseeable, it was clearly contemplated by the parties and the failure to make provision in the lease agreement for a denial of the zoning change indicates an assumption of such risk on the part of the Debtor.

Accordingly, this Court is satisfied that inasmuch as the lease had been effectively terminated prior to the filing of the petition for order for relief under Chapter 11 and that the debtor-in-possession, therefore, acquired no interest in lease, that the relief prayed for by the Authority should be granted and the automatic stay of § 362 should be lifted to permit the Authority to continue its proceedings to remove the Debtor from the premises.

A separate final judgment will be entered in accordance with the foregoing.