**In re ACORN INVESTMENTS, a Limited Partnership, dba Pizza Stop Restaurant, Debtor.**

**KEARNY MESA CROSSROADS, a California Limited Partnership, Plaintiff,**

v.

**ACORN INVESTMENTS, a Limited Partnership, dba Pizza Stop Restaurant, Defendant.**

**Bankruptcy No. 80–03306–M.**
**Complaint No. C80–0569–M.**

United States Bankruptcy Court,
S. D. California.

Jan. 22, 1981.

Steven S. Wall and Michael T. Andrew, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for plaintiff.

William Fischbeck, El Cajon, Cal., for debtor/defendant.

## MEMORANDUM OPINION REGARDING MOTION FOR SUMMARY JUDGMENT ON COMPLAINT FOR RELIEF FROM STAY

### I

JAMES W. MEYERS, Bankruptcy Judge.

This controversy presents related questions concerning the assumption of a commercial real property lease under Section 365 of the United States Bankruptcy Code ("Code") and relief from the automatic stay imposed by Section 362 of the Code. The lease in question was entered into between the debtor's assignors and plaintiff, Kearny Mesa Crossroads, a limited partnership.

After difficulties arose between the parties, the debtor sought protection under the jurisdiction of this Court. Plaintiff thereafter filed its complaint for relief from stay on November 19, 1980. A short time later, plaintiff filed its motion for summary judgment. The parties then filed supporting memoranda and affidavits and the matter was heard by this Court.

On December 11, 1980, the Court, after reviewing the pleadings and hearing the arguments of the parties, granted plaintiff's motion for summary judgment and lifted the automatic stay. This opinion is filed to explain that decision.

### II

### FACTS

On October 11, 1978, plaintiff's predecessor in interest leased space in a shopping center to four individuals, Mr. & Mrs. Mack-

enzie and Mr. & Mrs. Graves. They began operating a pizza restaurant on the premises known as the Pizza Stop. These individuals have continued to be involved in the management and operation of this establishment, although at some point in time they assigned their interests in the lease to the debtor.

The restaurant continued in operation into the Spring of 1980 and evidently relations between the parties were congenial. Unfortunately, the debtor hit upon financial hard times in May of 1980, and became unable to pay the monthly rent. This situation persisted for several months as things deteriorated. On July 30, 1980, plaintiff reacted by issuing to the debtor a three day notice to quit or pay rent. The plaintiff also elected to declare the lease forfeited and stated so in its three day notice.[1] No cure was forthcoming from the debtor.

This prompted plaintiff to file an unlawful detainer action in state court, see Cal. Civ.Proc.Code §§ 1161 et seq. (West), which resulted in plaintiff obtaining a default judgment against the four original lessees on November 10, 1980.[2] In particular, the default judgment declared that the lease was forfeited and that the plaintiff was entitled to immediate possession of the premises.

On November 10, 1980, plaintiff secured a writ of execution for possession of real property and prepared to levy the writ upon the leased property on November 19, 1980. This was never accomplished, however, as the debtor filed its Chapter 11 petition with this Court on November 18, 1980, staying that action.

## III

## DISCUSSION

The contentions of the parties must be viewed in light of certain well established principles governing motions for summary judgment. Summary judgment will be proper when the pleadings, together with any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c). See e. g., Bieghler v. Kleppe, 633 F.2d 531, 532–33 (9th Cir. 1980). The party moving for summary judgment has the initial burden of showing the absence of a genuine issue as to any material fact. See e. g., Adickes v. Kress & Co., 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970).

When a movant submits an adequately prepared motion, however, the burden of proof shifts to the opposition, who must then come forward with facts which controvert the movant's case. In particular, the opposition must show the existence of a genuine factual issue which would necessitate a trial. See e. g., Turner v. Loc. U. No. 302, Intern. Broth. of Team., 604 F.2d 1219, 1228 (9th Cir. 1979). This Court, moreover, is bound to draw all inferences in the light most favorable to the party opposing the motion. See Bieghler v. Kleppe, supra, 633 F.2d at 533.

Here, plaintiff's motion adequately supports its contention under Rule 56 that there are no material factual disputes involved in this matter. The essential facts surrounding the unlawful detainer proceeding are agreed upon and the debtor has not come forward with any evidence which demonstrates the existence of a material factual question. See generally Thi-Hawaii v. First Commerce Fin. Corp., 627 F.2d 991, 994 (9th Cir. 1980). This leaves remaining the question of whether the debtor can refute plaintiff's contention that it is entitled to relief from the stay as a matter of law.

### A.   The Termination of the Lease

Plaintiff initially argues that the lease with the debtor was completely terminated

---

1. The lease defines the term "default" in several ways one of which is the failure to pay rent when due and failure to cure that arrearage after receipt of a three day notice to quit or pay rent. Upon default the lease afforded plaintiff the "remedy" of terminating the lease by written election.

2. No appeal was taken from this judgment. See generally Cal.Civ.Proc.Code, §§ 1176, 1178 (West). Additionally, for the purposes of this proceeding, the parties have not contested the binding effect of the state court default judgment on the debtor, although it was not a named defendant in that proceeding.

prior to the filing of the debtor's Chapter 11 petition. Based upon this premise, plaintiff contends that the automatic stay under Section 362 did not become applicable so as to protect the debtor who was then unlawfully possessing the property.

The debtor attempts to counter this argument by suggesting that it has at least an equitable interest in the leased property, which interest is evidently based upon its possession of the premises. The debtor, therefore, views the question of relief from the stay as the central issue here.

■ It is clear that under California law, the mere issuance of a written notice of termination did not put the lease between the parties to an end. The occurrence of a default by the debtor afforded plaintiff the opportunity, though, to exercise its rights and put its termination *into effect* by recourse to California's unlawful detainer procedures. *See Sexton v. Nelson*, 228 Cal. App.2d 248, 256–58, 39 Cal.Rptr. 407 (1964). When plaintiff obtained its final default judgment, the debtor's right to possession of the premises was terminated. *See* Cal. Civ.Proc.Code § 1174(a) (West). This ended the landlord tenant relationship under state law. *See* Cal.Civ.Code § 1951.2(a) (West) (termination of tenant's right to possession terminates the lease).

This fact, however, does not mean that the stay under Section 362 did not "attach" to protect the debtor's leasehold interest, as plaintiff suggests. The existence of a legal or equitable interest of the debtor in certain property does not activate the stay's operation here, as Section 362(a)(2) prohibits the enforcement of a prepetition judgment against the debtor regardless of the status of any property interests involved. *See* 11 U.S.C. § 362(a)(2); 2 *Collier on Bankruptcy*, ¶ 362.04[2] (15th ed.) (*"Collier"*). Section 362(a)(2), therefore, would enjoin an attempt to regain possession of the debtor's former leasehold. This is so because the levy of a writ of execution for possession of

realty, *see* Cal.Civ.Proc.Code § 1174(d) (West), would constitute an attempt to enforce a prepetition judgment of unlawful detainer against the debtor.[3] Moreover, in analogous cases courts have found that the stay *does* become applicable in such cases. *See Matter of GSVC Restaurant Corp.*, 3 B.R. 491, 494–95, 6 B.C.D. 134, 135 (Bkrtcy. S.N.Y.1980); *Matter of Racing Wheels, Inc.*, 5 B.R. 309, 6 B.C.D. 719, 720–21 (Bkrtcy.M. Fla.1980); *Matter of Mimi's of Atlanta, Inc., supra*, 5 B.R. at 626–27, 6 B.C.D. at 809; *In re Aries Enterprises, Limited*, 3 B.R. 472, 475, 6 B.C.D. 280, 281 (Bkrtcy.D. Col.1980).

Accordingly, although the lease was formally terminated prior to the filing of the debtor's petition, the stay under Section 362 was effective with respect to plaintiff's unlawful detainer remedies. This raises the question of whether the stay should be lifted.

## B. *Relief from the Automatic Stay*

Plaintiff argues here that there is adequate "cause" for relief from the stay because the debtor's lease has been terminated and it is therefore an expired lease not subject to assumption under Section 365 of the Code. *See* 11 U.S.C. § 365. Plaintiff then points out that there is no possibility of rehabilitating the lease because of this, and that this fact constitutes sufficient cause for lifting the stay. *See* 11 U.S.C. § 362(d)(1).

The debtor, on the other hand, stresses the importance of a continuing leasehold to the successful reorganization of the debtor. The debtor also urges that plaintiff's position is adequately protected, although no specific method or proposal for adequate protection has been suggested by the debtor.

■ Plaintiff's argument is well taken. First of all, plaintiff received a state court judgment which declared the lease forfeited

---

**3.** A levy of the writ of execution would also be stayed by Section 362(a)(1), as this section prohibits the continuation of any "judicial proceeding" against the debtor. *See* 11 U.S.C.

§ 362(a)(1); *Matter of Mimi's of Atlanta, Inc.*, 5 B.R. 623, 626–27, 6 B.C.D. 807, 809 (Bkrtcy.N. Ga.1980).

**510**

and ended the landlord tenant relationship. It is clear that a lease which has been terminated prior to the filing of a Chapter 11 petition has "expired", or ceased to be executory, within the meaning of Section 365 of the Code.[4] Such a lease is not assumable. *See In re Hospitality Associates, Inc.,* 6 B.R. 778, 6 B.C.D. 1142 (Bkrtcy.Or. 1980); *In re Aries Enterprises, Limited, supra,* 3 B.R. at 475, 6 B.C.D. at 282; *Matter of Mimi's of Atlanta, Inc., supra,* 5 B.R. at 628, 6 B.C.D. at 810; D. Fogel, *Executory Contracts and Unexpired Leases in the Bankruptcy Code,* 64 Minn.L.Rev. 341, 346 (1980). This was also the result under the former Bankruptcy Act. *See In re Jolly,* 574 F.2d 349, 350–51 (6th Cir. 1978) (Chapter XIII); *Matter of Commodity Merchants, Inc.,* 538 F.2d 1260, 1262 (7th Cir. 1976) (Section 70(b) of the Act). The Court would also note that this case does not involve the kind of special equitable considerations which would justify refusal to enforce the termination of the lease. *See In re Bronx-Westchester Mack Corporation,* 4 B.R. 730, 734, 6 B.C.D. 581, 584 (S.N.Y. 1980); *In re Fontainebleu Hotel Corporation,* 515 F.2d 913, 914 (5th Cir. 1975); *Queens Boulevard Wine & Liquor Corp. v. Blum,* 503 F.2d 202, 204–07 (2d Cir. 1974).

Secondly, because a debtor cannot rehabilitate a lease which has already expired under Section 365, there is no need to allow the stay to remain in effect with regard to that lease. This inability to assume has already been termed adequate "cause", under Section 362(d)(1), to warrant a lifting of the stay. *See Matter of Mimi's of Atlanta, Inc., supra,* 5 B.R. at 626–27, 6 B.C.D. at 809; *In re Aries Enterprises, Limited, supra,* 3 B.R. at 475, 6 B.C.D. at 281–82. In short, there is no controlling reason to keep the stay in effect here, as to do so would only frustrate plaintiff's legitimate aim of recovering its property from a debtor who now occupies the premises without any legal or equitable right to do so.

V

CONCLUSION

Based on the foregoing, the Court concludes that cause exists to lift the stay imposed by Section 362, and that there are no genuine issues of material fact which necessitate a trial. Accordingly, plaintiff is entitled to summary judgment.

Being that the lease here was judicially terminated, it is not performable and therefore cannot be considered executory in nature. *See House Report, supra,* at 347, U.S.Code Cong. & Admin.News 1978 at 6303 (defining an "executory" agreement as one requiring mutual performance); 2 *Collier, supra,* at '. 365.02; *In re Sun Ray Bakery, Inc.,* 5 B.R. 670, 6 B.C.D. 847, 848 (Bkrtcy.Mass.1980).

---

4. The legislative history of the Code does not provide a definitive statement of what is an "unexpired lease" under Section 365. *See* H.R. Rep.No.95–595, 95th Cong., 1st Sess. 347–50 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6303–6306. ("*House Report*"). Leading commentators, though, suggest that the phrase was included in the section to resolve any doubt that such leases were executory agreements. *See* 2 *Collier, supra,* ' 365.02.