In re Harry L. SCHWAB, Debtor.

CATE ENTERPRISES, INC., Plaintiff,

v.

Harry L. SCHWAB, Defendant.

Bankruptcy No. 80–00410–G.
Adv. No. 4–80–0126–G.

United States Bankruptcy Court,
D. Massachusetts.

June 18, 1981.

Paul R. Salvage, Springfield, Mass., for plaintiff.

Michael West, Springfield, Mass., for defendant.

## MEMORANDUM AND ORDER ON COMPLAINT FOR RELIEF FROM STAY

PAUL W. GLENNON, Bankruptcy Judge.

This matter involves a purported lessee of property seeking to recover possession from its alleged sub-tenant, the debtor. The facts do not appear to be in substantial dispute, although the court is troubled by the methods of counsel in bringing to the court's attention certain documentary evidence. For instance, an original lease was attached to the complaint as an Exhibit "A", but was never introduced at trial. Further, the agreement between the plaintiff and defendant regarding the alleged sub-lease was never introduced properly into evidence, but was attached as an addendum to the defendant's memorandum of law. Since these are the most critical pieces of tangible evidence, they should have been properly introduced into the record. However, since both parties appear to be in substantial agreement as to the facts, and neither side has objected to the validity or the propriety of the presentation of the documents theretofore referred to, I feel I can treat both the February 1976 original lease, and the June 1976 agreement between plaintiff and defendant as admitted by the parties, and proceed to a decision on the merits.

## FACTS

On February 1, 1976, North Wilbraham Drive-In Theatre, Inc. ("the Lessor") and Cate Enterprises, Inc. ("Cate") entered into a lease agreement for the lease of a parcel of property in North Wilbraham, Massachusetts known as the Parkway Drive-In Theatre. It was a 10 year lease, with payments of $3,333.33 to be made monthly for the first five years, and $3,541.66 every month for the second five years. The lease calls for the property to be used as a motion picture theatre. The lease reserves to the Lessor the right to enter the premises for inspection, maintenance or repair work. Section 17 of the lease prohibits the assignment or sublease of the premises without the written consent of the Lessor, which consent could not be reasonably withheld. Further, the lease provides that unauthorized assignment of the lease, or an unauthorized sublease, shall terminate the lease at the Lessor's option. Finally, the lease provides that any action taken under the bankruptcy act shall constitute a breach, and the lease goes on to specify four possible remedies for the Lessor upon a breach by the Lessee, including the right to re-enter the premises, terminate the lease, and re-let the premises. All of these terms are contained in a copy of the lease agreement attached as Exhibit "A" to the Complaint.

On June 30, 1976, approximately 5 months after commencement of the lease, Cate and Harry Schwab ("Schwab") entered into an agreement ("Agreement") whereby each released their rights against the other on certain matters and further agreed:

1. That Cate would sublease the Parkway Drive-In Theatre to Schwab in accordance with the terms and obligations set forth in a master lease by and between

Cate and Sportsystems, Inc.[1] Schwab was to pay rent directly to Cate, and Schwab was to be responsible for all real estate and personal property taxes accruing during the term of the agreement. The agreement also provides a contingency plan in the event that Cate's "Landlord" did not approve of Schwab as a "subtenant".[2] All of the above information has been gleaned from the Agreement attached as "Exhibit A" to the Debtor's Memorandum of Law. It should be noted here that Harry Schwab was originally the President of Cate and had negotiated the original lease between Cate and the Lessor. Oddly, however, the court is not in possession of the "master lease" which is referred to in the Agreement, nor was the court offered any explanation as to how the terms of that lease might differ from the original lease between Cate and the Lessor. The dispute here to some extent centers around the nature of the agreement between Cate and Schwab, yet the court does not have all the documents before it which might bear upon the decision in that regard. If the court is to characterize the arrangement either as an assignment or as a sublease, it must understand the *terms* of the arrangement between Cate and Schwab.

In spite of my observations, however, there are sufficient other facts for a decision on certain issues. They are as follows:

1. On March 17, 1980, Cate brought a summary process action against Schwab in the Massachusetts state court, seeking possession of the Parkway Drive-In for non-payment of rent, taxes, and other charges.

2. On June 27, 1980, after extensive discovery, the case was called for trial. Counsel for Schwab indicated at that time that a Suggestion of Bankruptcy had been filed with the clerk's office and that a Chapter 11 proceeding was being filed that very afternoon. As such, he didn't feel compelled to proceed with the state court action or to comply with its orders. The judge in

that proceeding, noting the many delays in the proceeding up to that point, and showing his exasperation and disgust with what he perceived to be another dilatory tactic by Schwab, ordered the case dismissed and judgment for the plaintiff, Cate.

3. That same day, at 10:15 A.M. and probably during the very time of the hearing in the state court, the debtor, Schwab, filed his Chapter 11 petition for reorganization.

4. On June 30, 1980, a judgment of default for failure to answer interrogatories was entered by the state court against Harry Schwab.

5. The debtor has testified that the Parkway Drive-In provides a substantial portion of the debtor's gross business income ($200,000–$250,000) and is an integral factor in the debtor's ability to obtain top-grossing films.

## DISCUSSION

The plaintiff, Cate, seeks to regain possession of a premises of which it is not the owner, but a lessee. The defendant, Schwab, argues that he is an assignee of Cate, and not a sub-tenant, and therefore, cannot be "evicted" by Cate. The first basis for Cate's Complaint for Relief from Stay is that a valid state court judgment has been entered granting them possession. Second, Cate argues that even if the state court judgment is invalid, necessitating further hearings, the bankruptcy court should abstain jurisdiction and allow the state court action to proceed. Finally, Cate argues that even if the bankruptcy court feels compelled to rule on the matter, upon all the evidence it should rule in favor of the plaintiff.

### I

■ Looking initially at the first cause of relief, it is clear that the state court judgment entered on June 30, 1980 was in viola-

---

1. The Master lease which is referred to appears to have been originally attached to the Agreement as "Exhibit A", but was omitted from the record here.

2. This was the characterization used in the Agreement itself.

tion of the automatic stay provisions of the Bankruptcy Code. 11 U.S.C. § 362. Although the hearing before the state court judge was conducted almost simultaneously with the filing of the Chapter 11 petition, the formal judgment did not issue for another 3 days. Moreover, even if it could be determined that the judge's bench order was entered minutes before the filing of the petition, the entry of that order in the face of a suggestion in bankruptcy as well as the verbal protestations of debtor's counsel seems highly irregular on its face. While I am sympathetic with the frustration that the state court must have felt, it is eminently clear from the case law that even if the judgment is considered valid, the bankruptcy court has the power to stay enforcement of that judgment. *In re Acorn Investments*, 8 B.R. 506 (Bkrtcy.S.D.Cal.1981); *In re Pickus*, 8 B.R. 114 (D.Conn.1980); *In re Mimi's of Atlanta, Inc.*, 5 B.R. 623 (Bkrtcy.N.D.Ga.1980). Thus, since the automatic stay clearly applies to prohibit enforcement of any judgment, the court finds it unnecessary to determine the validity of the state court judgment, particularly since there has been no evidence submitted by Cate to support its request and the court is not prepared to enforce the judgment, in any event.

## II

Turning now to the second cause for relief, it is evident from the record that the state court proceeding was never decided on the merits of plaintiff's complaint. Furthermore, I recognize the argument of Cate's counsel that the jurisdiction of this matter, as a civil proceeding related to a case under title 11 of the United States Code, is originally but not exclusively with the bankruptcy court. 28 U.S.C. § 1471(b)(c). Pursuant to subsection (d) of that section, the court may, in the interest of justice, abstain from hearing such a matter.

■ In view of the circumstances of this case, I decline Cate's invitation to abstain in this matter. The property interest involved here represents a substantial portion of the debtor's business operation, and could have more than a nominal impact upon his reorganization efforts. While the question before the court involves an element of state law, it also requires a determination as to federal law. In particular, a resolution of the "sublease vs. assignment" state law question does not automatically resolve the "relief from stay" federal aspect of the case. Furthermore, I am inclined to hear the matter on the merits rather than remand the case for execution upon a state court judgment which was entered without a full trial. Finally, I am hesitant to remand the proceedings for further trial to a state court judge who has already indicated his displeasure with the debtor's tactics and probably wants nothing more to do with this case. In light of all I have referred to, the interests of justice would seem to be best served if the matter were determined by the bankruptcy court.

## III

Finally, as to the merits of the complaint, it seems counsel did not expect the court to go beyond both of the first two causes for relief, and therefore, did not prepare its case as fully as might be expected. Nor did the defendant introduce all the evidence which the court feels might be relevant and material to its determination. Thus, the matter should be scheduled for further hearing regarding what characterization is to be made of the Agreement between Cate and Schwab, and the basis for granting relief from the stay. My earlier remarks will help to enlighten counsel in that respect and the court shall receive from counsel, at least 3 days prior to trial, any pre-trial memoranda which might help to clarify the facts and law for the court.