In re Franklin D. DARWIN, Debtor.

BUCKNELL LEASING CORP., Plaintiff,

v.

Franklin D. DARWIN and Kenneth Kirschenbaum, as Trustee, Defendants.

Bankruptcy No. 182–10135–260.
Adv. No. 182–0241.

United States Bankruptcy Court,
E. D. New York.

July 29, 1982.

Pennisi & Dowd, Kew Gardens, N. Y., for Bucknell Leasing Corp., landlord.

Lawrence J. D. Mort, New Counsel, Horowitz & Associates, P. C., Original Counsel, New York City, for debtor; Jesse Barab, New York City, of counsel.

AMENDED OPINION

CONRAD B. DUBERSTEIN, Bankruptcy Judge.

INTRODUCTORY STATEMENT

This case presents a pattern of conduct which has been increasing in the metropolitan area where debtors seek the benefits of Chapter 13 of the Bankruptcy Code to prevent their being dispossessed from their apartments for non-payment of rent. Because the commencement of a bankruptcy case generally stays a creditor from instituting or continuing an action against the debtor or its property until the bank-

ruptcy court orders otherwise,[1] the landlord's efforts to oust the tenant is severely thwarted where the tenant files a Chapter 13 petition. Inasmuch as Chapter 13 enables the tenant-debtor to propose a plan to cure the rental arrears defaults over a reasonable period of time,[2] and provide adequate assurance for payment of current rent,[3] the existence of a lease between the parties as of the commencement of the case is of paramount importance and is crucial. This court holds that the facts present in this case justify a finding that at the time the debtor filed his petition for relief under Chapter 13, his lease had terminated, he had no rights thereunder, and the landlord, who has come into this court to oust him from possession, is entitled to have the automatic stay lifted so as to proceed to enforce its rights and remedies.

## FACTS

The debtor, Franklin D. Darwin, filed a Chapter 13 petition pursuant to § 1301 et seq. of the Bankruptcy Code on January 21, 1982. The Chapter 13 statement and plan were thereafter filed on February 3, 1982. Debtor's schedules list only two debts: a debt consisting of past due rent totalling $2,100 owed the debtor's landlord, Bucknell Leasing Corporation (hereinafter "Bucknell") at the time of the filing of the petition and a student loan amounting to $1,500.

On May 3, 1982, Bucknell filed an adversary proceeding pursuant to Rule 701 et seq. of the Bankruptcy Rules seeking relief from the automatic stay so that it could proceed to evict the debtor from the rental premises. The complaint alleged in part that the landlord-tenant relationship between the debtor and Bucknell terminated on December 1, 1981, that the debtor owed $2,217.79 representing pre-petition rent and that he had failed to make current post-petition rent payments for the months of Feb-

ruary, March and April. The debtor submitted an answer wherein he denied several of the landlord's allegations relating to the tender of rent payments and the debtor's willingness and ability to continue to make such payments. The monthly rent reserved in the lease was $375.29.

The matter was brought before this court on June 2, 1982 wherein, after hearing oral argument and giving due consideration, this court ruled in favor of Bucknell but stayed the effect of such decision for 30 days, upon the payment by the debtor of one month's rent, to afford the debtor and his family an opportunity to find another place to live. This decision was memorialized in an order dated June 4, 1982, which provided the following:

"It is ORDERED, that the application is hereby granted, that the stay granted pursuant to 11 U.S.C. § 362 is vacated 30 days from the date this order is signed. Provided however, that the debtor is ordered to pay one month's rent on or before June 8, 1982 or the stay will be vacated June 9, 1982."[4]

On June 10, 1982, the attorney for Bucknell filed an affirmation stating that the one month's rent was not paid and that it thus considered the stay vacated as of June 9, 1982 in accordance with the order of June 4, 1982. The money was paid several days later. This court sought the good offices of Bucknell through its counsel, to allow Darwin to remain for the balance of the 30 day period, notwithstanding that the payment was not timely made. Bucknell agreed.

On July 3, 1982, Darwin, through new counsel, sought the issuance of an order by my colleague, Honorable Cecelia H. Goetz, in my absence, requiring Bucknell to show cause why the order of June 4, 1982 should not be changed to extend the stay in the order for an additional fifteen days. In addition, the order contained a stay of the

---

**1.** 11 U.S.C. § 362(a)(2) & (a)(3) and 11 U.S.C. § 362(a)(1)(2)(3), (d) and (e).

**2.** 11 U.S.C. § 1322(b)(5).

**3.** 11 U.S.C. § 365(b)(1)(A)(B)(C).

**4.** It appears that a notice of appeal was not filed from the June 4, 1982 order within the statutory time period provided in Rule 802(a) of the Bankruptcy Rules, nor was there a motion filed pursuant to Rule 802(b) of the Rules.

execution of the eviction until further order of this court. Judge Goetz issued the order and made the matter returnable before me on July 6, 1982. Again, after careful and thorough consideration this court denied the application.

The following represents the written findings of fact and conclusions of law upon which the decisions of June 2 and July 6, 1982 were based:

1. On February 19, 1981, the debtor and Bucknell entered into a lease agreement for the rental of an apartment by the debtor.

2. In August 1981, Bucknell as landlord commenced an action against the debtor as tenant in the Civil Court of the City of New York, County of Queens—Housing Part, for non-payment of rent. The matter was assigned to Judge Maurice Harbater.

3. On November 5, 1981, an unconditional consent judgment was entered into before Judge Harbater in the sum of $925.40 covering past due rent for the period from August 1, 1981 to October 31, 1981 inclusive, with payment to be made by the debtor on or before November 15, 1981.

4. On December 1, 1981, as a result of the debtor's failure to comply with the unconditional consent judgment, a warrant of eviction was issued by Judge Harbater to the Marshal of Queens County.

5. On December 22, 1981, a 72 hour notice was served on the debtor, as required by R.P.A.P.L. § 749. The eviction was scheduled for January 6, 1982.

6. On January 5, 1982, the debtor presented an order to show cause to Judge Harbater why the warrant of eviction should not be vacated, which order was signed on that date. The order provided for the staying of the eviction pending a hearing on the motion to vacate the warrant, the latter being made returnable on January 13, 1982.

7. On January 13, 1982, the following decision was rendered by Judge Maurice Harbater on the motion to vacate the judgment:

"This was an unconditional consent judgment for $925.40 covering all rent through 10/31/81 on 11/5/81. Stay was 11/15/81.

There is no proof that T [tenant] mailed the money to L [landlord] on 11/14/81 and no proof that L returned the money to T by mail (no envelope of L).

Tenant could have deposited with the Clerk of the Court as warrant was not issued to marshal until 12/1/81.

The tenant waited until a 72 hour notice was served with the Tenant now owing, in addition to the judgment, the months of Nov. Dec. & Jan.

The L & T relationship has terminated and no good cause has been shown to vacate warrant, etc.

Denied—

/s/ MH

Maurice Harbater

Judge, Housing Part"

8. No appeal was taken from Judge Harbater's decision.

9. On January 14, 1982, a second 72 hour notice was served. The eviction was scheduled for January 22, 1982.

10. On January 21, 1982, the Chapter 13 petition was filed.

### DISCUSSION

The automatic stay provision found in § 362 of the Code provides in pertinent part that the enforcement of a judgment against the property of the estate obtained before the commencement of the bankruptcy case or any act to obtain possession of property of the estate is stayed.[5] The term "property of the estate" is defined and delineated in 11 U.S.C. § 541 which provides in pertinent part that the estate is comprised of "... all legal and equitable interests of the debtor in property as of the commencement of the case." In order to determine what interest, if any, the debtor had in the lease at the commencement of the case, this court must look to state law.

5. Supra note 1.

Under the laws of the State of New York it is not the execution of the warrant, but the issuance of a warrant for the removal of a tenant that "cancels the agreement under which the person removed held the premises and annuls the relationship of landlord and tenant ..." N.Y.R.P.A.P.L. § 749 (McKinney 1979). *In re G.S.V.C. Restaurant Corp.*, 3 B.R. 491, 6 B.C.D. 134, 1 C.B.C.2d 727 (Bkrtcy.S.D.N.Y.1980) *aff'd* 10 B.R. 300, 6 B.C.D. 295 (S.D.N.Y.1980); *In re Butler*, 14 B.R. 532, 534, 4 C.B.C.2d 1011, (Bkrtcy.S.D.N.Y.1981); *In re Torres*, 61 A.D.2d 681, 682, 403 N.Y.S.2d 527, 529 (1978) ("Analysis of this case must begin with the unquestioned premise that the issuance of a warrant of eviction annuls the relationship of landlord and tenant. (Real Property Actions and Proceedings Law § 749 Subd. 3; *300 West Realty Co. v. Wood*, 69 Misc.2d 580, 581, 330 N.Y.S.2d 524, 526, aff'd 69 Misc.2d 582, 330 N.Y.S.2d 527 ..."); *In re Lane Foods*, 213 F.Supp. 133, 135 (S.D.N.Y.1963); *Bergen Meat Co., Inc. v. Chelsea 23rd St. Corp.* et al, 126 N.Y.S.2d 826, 830, (Sup.Ct.1953). Thus, the landlord-tenant relationship that existed between the debtor and Bucknell was terminated and the lease cancelled on December 1, 1981, the date of the issuance of the warrant.

This court cannot agree with the observation made by the court in *In re Richards Pontiac, Inc.*, 6 B.R. 773 (Bkrtcy., E.D.N.Y. 1980) that the New York cases "have held that the landlord-tenant relationship is not extinguished until the actual execution of the warrant." Section 749(3) provides in full:

"The issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises, and annuls the relationship of landlord and tenant, but nothing contained herein shall deprive the court of the power to vacate such warrant for

good cause shown prior to the execution thereof. Petitioner may recover by action any sum of money which was payable at the time when the special proceeding was commenced and the reasonable value of the use and occupation to the time when the warrant was issued, for any period of time with respect to which the agreement does not make any provision for payment of rent."

In the case of *300 West Realty Co. v. Wood*, 69 Misc.2d 580, 581, 330 N.Y.S.2d 524, 526 *aff'd* 69 Misc.2d 582, 330 N.Y.S.2d 527, the court stated the following:

"Clearly, the landlord is under no obligation to accept rent after the issuance of a warrant of eviction, (*Greenberg v. Cagle*, Sup., 212 N.Y.S.2d 767) because the issuance of the warrant annuls the relationship of landlord and tenant (*Emray Realty Corp. v. Lloyd*, 5 Misc.2d 938, 158 N.Y.S.2d 852). However, the matter continues to be a pending proceeding until the warrant is executed (*Whitmarsh v. Farnell*, 298 N.Y. 336, 83 N.E.2d 543). Even after execution of the warrant, the court retains jurisdiction for certain purposes (*Matter of Albany v. White*, 46 Misc.2d 915, 261 N.Y.S.2d 361; *Matter of Joseph v. Cheeseboro*, 42 Misc.2d 917, 248 N.Y.S.2d 969, revd. on other grounds, 43 Misc.2d 702, 251 N.Y.S.2d (975)."[6]

If the debtor had filed his petition prior to December 1, 1981, the lease would have existed at the time of the filing thereby making it property of the estate and bringing it under the provisions of § 362(a)(2) and (a)(3). *See In re Butler, supra* ("... if a wage-earner has a valid operative lease with a landlord of residential premises at the time of filing under Chapter 13, the automatic stay provisions of 11 U.S.C. § 362 apply to prevent the issuance on account of unpaid pre-petition rent of a state court warrant of eviction.") 14 B.R. at 535, 4 C.B.C.2d at 1015.

**6.** The basis for the retention of jurisdiction, which reflects a change from prior law, is that the aggrieved party should be allowed to petition the court, wherein the warrant was issued, for an order vacating the warrant or extending the stay. In addition, the fact that the proceed-

ing remains pending is relevant with regard to the applicability of emergency rent laws which may be passed after the issuance and prior to the execution of the warrant. *See* 14 *Carmody Wait* 2d ¶ 90:296 (Lawyers Cooperative Publ. Co. 1967).

Furthermore, if a lease existed the debtor would have had the opportunity to assume the lease pursuant to 11 U.S.C. § 365 if he could provide adequate assurance of future performance [7] and cure the default within a reasonable time through payments under a Chapter 13 plan,[8] if such a plan met the requirements for confirmation as found in 11 U.S.C. § 1325. But if as here, there is no lease, there is nothing to assume and 11 U.S.C. § 365 cannot be utilized by the debtor since it is inapplicable. *G.S.V.C. Restaurant Corp., supra* 10 B.R. at 302, 6 B.C.D. at 296; *In re Mimi's of Atlanta, Inc.*, 5 B.R. 623, 629, 6 B.C.D. 807, 810, 2 C.B.C.2d 805, 813 (Bkrtcy.N.D.Ga.1980), *aff'd.* 11 B.R. 710 (N.D.Ga.1981); *In re Benrus Watch Company, Inc.*, 13 B.R. 331, 334, 4 C.B.C.2d 1401, 1404 (Bkrtcy.S.D.N.Y.1981); *In re Bronx-Westchester Mack Corp.*, 4 B.R. 730, 731, 6 B.C.D. 581, 581–2 (Bkrtcy.S.D.N.Y.1980); *In re Acorn Investments* 8 B.R. 506, 510, 7 B.C.D. 135, 137 (Bkrtcy.S.D.Cal.1981); *In re Ruby's Florida, Inc.*, 11 B.R. 171, 174 (Bkrtcy.M.D.Florida 1981); *In re Aries Enterprises Limited*, 3 B.R. 472, 475, 6 B.C.D. 280, 282, 1 C.B.C.2d 1069, 1073 (Bkrtcy.D.C. 1980); *In re Hospitality Associates, Inc.*, 6 B.R. 778, 780, 6 B.C.D. 1142, 1143, (Bkrtcy. D.Or.1980); *In re R. R. S., Inc.*, 7 B.R. 870, 872–73, Bankr.L.Rep. (CCH) ¶ 67,805 (Bkrtcy.M.D.Florida 1980); *In re Andorra Meat Market, Inc.*, 7 B.R. 744, 746–7 (Bkrtcy.E.D.Pa.1980).

It is equally clear that the bankruptcy court cannot resurrect a lease terminated prior to the filing of the petition. *In re Youngs*, 7 B.R. 69, 71, 3 C.B.C.2d 250, 253 (Bkrtcy.D.Mass.1980). The same result is reached even where the tenant is a debtor under Chapter 11, the business reorganization section of the bankruptcy law, notwithstanding that the lease may provide the basis for occupation of the debtor's principal place of business thereby making a declaration of the lease's existence necessary for the effective reorganization of the debtor-business. *In re Racing Wheels, Inc.*, 5 B.R. 309, 312–313, 6 B.C.D. 719, 720–721

(Bkrtcy.M.D.Fla.1980); *In re G.S.V.C., supra; In re Aries Enterprises, Ltd., supra; In re Fidelity American Mortgage Company & In re Whispering Brook Associates*, 19 B.R. 568, 9 B.C.D. 22, 26, (Bkrtcy.E.D.Pa. 1982); *In re Hospitality Associates, supra; In re Lane Foods, Inc., supra.*

In *Lane Foods*, a Chapter XI proceeding (business reorganization under the Bankruptcy Act of 1898) the district court went as far as to say that the bankruptcy court had jurisdiction to stay the execution of a warrant of eviction where the warrant had issued prior to the filing, but had not been served on the debtor until after the petition was filed. The basis of the holding was that the execution of the eviction would have had a devastating, if not fatal, effect on the reorganization of the debtor, there was no prospective tenant waiting in the wings, and the debtor had been making continuous payments for use and occupation of the premises. However, the court, recognizing that the issuance of the warrant cancelled the lease between the landlord and the debtor, made it quite clear that the stay was to be temporary and the landlord must eventually be allowed to take possession:

> "Since the debtor here was in possession, the Bankruptcy Court has the power to enjoin the threatened ouster for a reasonable period, if necessary, to effectuate the object of the Chapter XI proceeding. This, of course, does not mean that the debtor is entitled to remain in possession until the proceeding is consummated; it does suggest that it is within the broad equitable powers of the Bankruptcy Court, if the circumstances so require, to stay an eviction and to afford the debtor a reasonable opportunity to renegotiate with his landlord or to find new premises without interrupting the business, provided, of course, adequate compensation is paid to the landlord for use and occupation. 'It is a common situation for a debtor to be in default in payment of rent under a lease, and for the landlord there-

7. Supra note 3.

8. Supra note 2.

by to have the right to recover possession of the premises and to terminate the lease. The filing of a Chapter XI proceeding does not deprive the landlord of that right, although the court through its injunction powers may delay the enforcement of the landlord's remedy.' [8 Collier, Bankruptcy, ¶ 3.15 n.15 (14th ed. 1942)].

The payment to the landlord for use and occupation of his premises, of course, does not defeat his right to obtain possession, although it may be deferred in the exercise of the court's power." *Lane Foods*, 213 F.Supp. at 136.

■ The debtor contends that the fact that he tendered two post-petition rent payments to the landlord which were refused, should lead this court to a different result. Unfortunately for the debtor, under New York law, once the warrant of eviction is issued, the landlord is under no obligation to accept the tender of the rent and the tendering of the same does not reinstate the tenancy. *See In re Barry Dabney (Bay Park One Company v. Dabney)* Bankr. No. 73 B 2304 (Costa, B.J. July 12, 1979) aff'd. *In re Dabney* 22 C.B.C. 786 (E.D.N.Y.1980) citing *In re Torres*, supra; *300 West Realty Co. v. Wood, supra.*[9]

The debtor, through his counsel, argued at the hearing on the July 2, 1982 order to show cause, that the fact that the debtor was in possession of the premises at the time of the filing of the petition should constitute an equitable interest recognizable by the bankruptcy court and shielded by § 362 of the Code. This proposition was considered by the court in *In re G.S.V.C. Restaurant Corp., supra.* The bankruptcy court there, when confronted with this issue in a Chapter 11 proceeding, stated:

"There is no question that equitable interest in property is regarded as property of the estate within the meaning of 11 U.S.C. § 541 ... However, the debtor's right to possess the property in question has been judicially determined as demonstrably nonexistent; resulting in the state court ordered warrant of eviction." 3 B.R. at 494, 6 B.C.D. at 135, 1 C.B.C.2d at 730.

The court went on to say that even if the possession under those circumstances was construed to constitute property under § 541 and thus protected by § 362, the court would lift the § 362 stay pursuant to 11 U.S.C. § 362(d)(1) since the debtor "presented no evidence whatsoever concerning the issue of adequate protection of the plaintiff's interest in the property."[10] Additionally, the court stated that the "cause" necessary to lift the stay "would include the baseless delaying tactics employed by the debtor in this case." *Id.*

This protectible interest analysis was adopted in *In re Mimi's of Atlanta, Inc., supra.* It should be noted that the termination of the tenancy of the Chapter 11 debtors in *Mimi's* was unilateral as provided for in the lease agreement and the debtors had not had their day in the state court prior to the filing of the petition. With this in mind the bankruptcy court stated:

"Since the debtors have continually maintained possession of the premises and have never had an opportunity to refute the landlord's unilateral termination of the lease until the instant stay litigation was commenced, the court hereby finds that each of the debtors had a scintilla of equitable interest in the land-

---

**9.** If the tenant tenders the entire past due rent after issuance of the warrant and if the landlord accepts, then and only then is there a waiver of the right to consider the lease cancelled. *See* 14 *Carmody Wait* 2d at ¶ 90:312.

**10.** 11 U.S.C. § 362(d) provides the following:

"On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization."

lord's premises as of the date the petitions were filed, thereby making the stay imposed by § 362(a)(3) applicable to all attempts by the landlord to gain possession of the premises, whether the attempts require judicial supervision or not." 5 B.R. at 627, 6 B.C.D. at 809, 2 C.B.C.2d at 810.

The court then proceeded to lift the § 362 stay that it had just found to be applicable, on the basis that the lease having been terminated, the debtors-in-possession had no § 365 executory interest which they could assume. The *Mimi's* analysis was followed and the stay was lifted "for cause", said "cause" consisting of the inability to assume a terminated lease, in *In re Acorn Investments, supra; In re Andorra Meat Market, Inc., supra; In re R. R. S., Inc., supra*, (". . . the automatic stay provision of § 362(e) of the Bankruptcy Code does protect the debtor's naked right of possession of the premises, but for a very limited time only. *In re G.S.V.C. Restaurant Corp., supra*. This is so because the fact that the automatic stay continues in effect and protects the naked right of possession, it does not have any bearing on the continued viability of a lease agreement. Once the lease is terminated prior to the intervention of bankruptcy, the landlord-tenant relationship is gone regardless of the protection of the right to possession.") *R. R. S., Inc.* at 873. *See also In re Ruby's Florida, Inc., supra*. Thus even if this court were to adopt the "§ 541(a)–§ 362" analysis, it would have no other choice but to arrive at the same conclusion as was reached in the above decisions with the result that Bucknell would be entitled to relief from the stay.

This court does not question the good faith of the debtor in looking to the vehicle of a Chapter 13 proceeding to endeavor to continue to reside in his apartment. Unfortunately, by the time he entered the sanctuary of the bankruptcy court to avail himself of the benefits which the Bankruptcy Code provides for those who seek that reward, he was too late to receive its sacraments. But that does not mean he cannot effect the rehabilitation which Chapter 13 offers. He still can go forward with a plan for the readjustment of his debts in his Chapter 13 proceeding. The need for his apartment is not as vital to his rehabilitation (*See In re Youngs, supra* at 70–71) as were the places of business which the Chapter 11 debtors, in the above-cited cases, needed to effect reorganization, and even so, their evictions were ordered. Nevertheless, just as was done in several of those cases, this court permitted the debtor to remain on as an exercise of its equitable power motivated by its concern to provide him time to find another apartment for himself and his family.

However mindful this court is of the rights of a debtor in a bankruptcy proceeding, it would likewise be clearly inequitable to permit a debtor to cure a contractual obligation that has already expired. In *In re Chuck Wagon Bar-B-Que, Inc.*, 7 B.R. 92, 95, Bankr.L.Rep. (CCH) ¶ 67,810 (Bkrtcy.D. C.1980) this court stated:

"There clearly must come a point in time when the parties to a lease are entitled to legitimate expectation of finality in connection with their business dealings . . . To permit a debtor to assert rights under an already expired lease by resort to the equitable provisions of the Bankruptcy Code would undermine confidence not only in the certitude of contracts, but in the judicial system itself."

*See also, In re Dabney, supra; In re Jolly Joint, Inc.*, Bankr. No. 882–81141–18 (Parente, B.J., E.D.N.Y., June 10, 1982) aff'd. Civ. No. 82–1698 (Mishler, J., E.D.N.Y., June 25, 1982).

## CONCLUSION

It is clear to the court, after careful examination of all of the authorities and consideration of the equities, that the landlord is entitled to possession of the premises.

This opinion amends the previous opinion of this court dated July 12, 1982, only to the extent that it is supplemented by the Introductory Statement set forth at the outset of this opinion, as well as additional footnotes occasioned by the inclusion of said Introductory Statement.