In re WINDMILL FARMS,
INC., Debtor.

VANDERPARK PROPERTIES,
INC., Appellant,

v.

David L. BUCHBINDER, Trustee of
Windmill Farms Management
Company, Inc., Appellee.

No. 87–5707.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1987.

Decided March 25, 1988.

Carl Grumer, Brian W. Kaufman, Cooper, Epstein & Hurewitz, Beverly Hills, Cal., for appellant.

William M. Rathbone, Weeks, Willis, Rathbone & Johnson, San Diego, California, for appellee.

Before WALLACE, NORRIS and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Vanderpark Properties, Inc. ("Vanderpark"), the lessor of commercial real property in San Diego County, California, appeals from a judgment of the Ninth Circuit Bankruptcy Appellate Panel ("BAP"). The BAP affirmed an order of the bankruptcy court permitting the Chapter 7 bankruptcy trustee for Windmill Farms, Inc. ("WFI") to assume and assign the lessee's interest in a lease of commercial property from Vanderpark. Vanderpark argues that this lease had been terminated under California law before WFI filed its bankruptcy petition and, consequently, there was nothing for the trustee to assume and assign. Vanderpark also contends the bankruptcy court erred in holding an ex parte hearing on the issue of assumption of the lease, and in allowing assumption of the lease in the face of outstanding, uncured defaults by the lessee. Furthermore, Vanderpark contends the lease term has now expired because notice of exercise of a renewal option was not timely given.

We have jurisdiction pursuant to 28 U.S.C. § 158(d). We reverse the BAP and remand this case to the bankruptcy court for further proceedings.

I

FACTS

On July 30, 1975, Vanderpark leased commercial real property in California to Mini Super, Inc. for a ten-year term expiring on May 29, 1986. The lease contained an option permitting the lessee to renew the lease for an additional ten years by giving written notice to the lessor no later than September 29, 1985. Vanderpark subsequently consented to two assignments of the lease, the first to Windmill Farms, a general partnership, and the second from the partnership to WFI.

WFI is a wholly-owned subsidiary of Windmill Farms Management Company ("WFMC"). WFI is the general partner of Windmill Farms, Ltd. No. 1 ("WFL # 1"), a California limited partnership. WFMC is the general partner in other limited partnerships containing the Windmill Farms name. Because WFMC performs centralized accounting functions for the various Windmill Farm entities, Vanderpark received its lease payments from WFMC, rather than from WFI.

WFMC failed to remit WFI's February 1985 rent payment to Vanderpark. On February 15, 1985, Vanderpark served a three-days' notice to pay rent or quit. This notice was addressed to "Windmill Farms." In the notice, Vanderpark stated that it had elected to declare the lease forfeited if back rent and delinquent tax impounds were not paid within the three-days' notice period. The back rent and delinquent tax impounds were not paid, and on March 11, 1985, Vanderpark filed an unlawful detainer complaint against "Windmill Farms, a partnership." Vanderpark later amended this complaint to name WFI, WFMC and WFL # 1 as additional defendants.

On February 27, 1985, an involuntary bankruptcy proceeding was commenced against WFMC. In May 1985, WFMC's trustee, Buchbinder, learned of Vanderpark's unlawful detainer action. Buchbinder thought the lease belonged to WFL # 1, so he filed a Chapter 7 petition for WFL # 1. The WFMC and WFL # 1 cases were consolidated, and Buchbinder moved to assume the lease.

Vanderpark opposed the lease assumption. After an evidentiary hearing on September 27, 1985, the bankruptcy court concluded that the lease belonged to WFI, and because WFI was not a party to the consolidated proceedings, Buchbinder, as trustee for the other Windmill Farms entities, could not assume the lease. The September 27 hearing took place on a Friday. The following Monday, September 30, 1985,

Buchbinder filed a Chapter 7 petition on behalf of WFI and filed an ex parte motion to consolidate the WFI petition with the other consolidated Windmill bankruptcy court proceedings. He also moved in that ex parte proceeding to be appointed trustee for WFI, to assume the lease from Vanderpark, to exercise the lessee's option to renew the lease, and to assign the lease free and clear of interests and liens. The bankruptcy court granted these motions. Buchbinder, as trustee for WFI, assumed the lease, and later sold it for $106,000. Both Vanderpark and Buchbinder now claim these proceeds.[1]

## II

## ANALYSIS

### A. *Standard of Review*

█ This court reviews a decision of the Bankruptcy Appellate Panel de novo. *Briney v. Burley (In re Burley)*, 738 F.2d 981, 986 (9th Cir.1984). This is because both the BAP and the court of appeals apply the same standard of review to the underlying judgment of the bankruptcy court. *Id.* Consequently, we evaluate the bankruptcy court's findings of fact under the clearly erroneous standard and review its conclusions of law de novo. *Id.; Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1399 (9th Cir.1984).

### B. *Termination of the Lease*

The Bankruptcy Code permits a trustee, with court approval, to "assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). However, "[t]he trustee may not assume or assign any executory contract or unexpired lease of the debtor ... if ... such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief."

11 U.S.C. § 365(c)(3). The phrase "applicable nonbankruptcy law" means applicable state law. *See City of Valdez v. Waterkist Corp. (In re Waterkist Corp.)*, 775 F.2d 1089, 1091 (9th Cir.1985). Simply put, if a lease of nonresidential real property has been terminated under state law before the filing of a bankruptcy petition, there is nothing left for the trustee to assume. *See Kearny Mesa Crossroads v. Acorn Investments (In re Acorn Investments)*, 8 B.R. 506, 510 (Bankr.S.D.Cal.1981).

The first question we address, therefore, is whether the subject lease, which was of "nonresidential" real property, terminated under California law before WFI filed its bankruptcy petition. Vanderpark argues that in California a lease terminates no later than the day on which the lessor files his unlawful detainer action in state court following a properly given three-days' notice to pay rent or quit, coupled with the failure of the tenant to cure the default within the three-day period, and provided the three-days' notice contained the lessor's election to declare the lease forfeited. It relies on *In re Escondido West Travelodge*, 52 B.R. 376 (S.D.Cal.1985), as support for this proposition.[2]

Buchbinder, on the other hand, argues that the lease had not terminated by the time WFI filed its Chapter 7 petition, because as of that date Vanderpark had not obtained a favorable judgment in its unlawful detainer action. Because the lease had not terminated, he contends the lease was assumable by him, he properly assumed it, sold it, and the proceeds belong to the WFI Chapter 7 estate. The BAP agreed with Buchbinder. *See In Re Windmill Farms, Inc.*, 70 B.R. 618, 623 (BAP 9th Cir.1987). We agree with Vanderpark. If the three-days' notice to pay rent or quit was properly given, the lease terminated at least by the time Vanderpark filed its unlawful de-

---

1. Although Vanderpark contends the bankruptcy court erred in approving the assumption and assignment of the lease, it does not seek to have the assumption or the assignment set aside. Rather, it argues that the sale proceeds from the assignment belong to it because it alone had the right to place the new tenant into possession and collect the $106,000, which, in effect, is a bonus for letting the new tenant have the prem-

ises for the rent and on the terms of the Vanderpark–WFI lease.

2. This argument assumes that the three-days' notice to pay rent or quit has been properly given. We address this assumption later in this opinion.

tainer action in California state court. We need not decide whether the lease terminated *before* Vanderpark filed its unlawful detainer action.

### 1. *The California Statutes*

California Civil Code section 1951.2(a) provides that "if [the lessee's] right to possession is terminated by the lessor because of a breach of the lease, the lease terminates." Cal.Civ.Code § 1951.2(a) (West 1985). No one disputes that the lessee, WFI, breached the lease by not paying the rent and property tax impounds. It is also uncontroverted that in its three-day notice to pay rent or quit, the lessor, Vanderpark, notified WFI that if the back rent and delinquent tax impounds were not paid within the three-days period, the lease would terminate. The question, therefore, is whether the lessor's act of giving the three days' notice, which declared a forfeiture of the lease, coupled with the lessee's failure to cure the default within the three-day period, terminated WFI's right to possession under section 1951.2(a). If WFI's right to possession was terminated, then according to the plain language of California Civil Code section 1951.2(a), the lease was terminated.

We look to California's unlawful detainer statutes to determine when a lessee's right to possession is terminated in these circumstances. *See* Cal.Civ.Proc.Code § 1161 (West 1982). A tenant who is guilty of unlawful detainer cannot possibly have the right to possession of the property. He still may be in possession of the property, but his possession is not rightful; it is unlawful. California Code of Civil Procedure section 1161 specifies when this possession becomes unlawful:

> A tenant of real property ... is guilty of unlawful detainer:
>
> ....
>
> When he continues in possession ... without the permission of his landlord ... after default in the payment of rent, pursuant to the lease ... under which the property is held, and three days' notice, in writing, requiring its payment, stating the amount which is due, or pos-

session of the property, shall have been served upon him....

Cal.Civ.Proc.Code § 1161(2). After the three-days' notice period has passed, if the tenant remains in possession, the landlord may file his unlawful detainer complaint and proceed according to Code of Civil Procedure section 1174(a), which provides:

> If upon the trial, the verdict of the jury, or, if the case be tried without a jury, the findings of the court be in favor of the plaintiff and against the defendant, judgment shall be entered for the possession of the premises; and if the proceedings be for an unlawful detainer ... after default in the payment of rent, the judgment shall also declare the forfeiture of such lease or agreement *if the notice required by Section 1161 states the election of the landlord to declare the forfeiture thereof, but if such notice does not so state such election, the lease or agreement shall not be forfeited.*

*Id.* § 1174(a) (West 1988) (emphasis added). As we interpret these statutes, upon the expiration of three days after the lessor has given the lessee the notice required by section 1161(2), if the lessee has failed to pay the rent in default, the lessor has terminated the lessee's right to possession. The lessor may then rely upon section 1174(a) to regain actual possession of the premises. And if the lessor stated a forfeiture election in his notice to the lessee, the lessor also is entitled to a judicial declaration of forfeiture of the lease. *Id.*

The BAP failed to distinguish between a judicial declaration of forfeiture of the lease and the lessor's termination pursuant to the three-days' notice. This confusion between termination of the lease and a court declaration of forfeiture was discussed in *In re Escondido West Travelodge*, 52 B.R. 376 (S.D.Cal.1985). There the court stated that there is a

> tendency of the courts to collapse into one concept the two separate concepts of "the time at which a lease is terminated," on the one hand, and "the time at which there is a final judicial determination that a lease is terminated," on the other. Importantly, these two events are not nec-

essarily coincident. *It is possible to define termination in such a way that events sufficient to constitute termination of a lease occur long before a court determines that the termination is valid under state law.*

*Id.* at 379 (emphasis added). After the three-days' notice period has expired, if the lessee has failed to pay the rent in default, the lessee from that point forward is unlawfully detaining the premises if he remains in possession. *See* Cal.Civ.Proc. Code § 1161(2). Because his detention is "unlawful," he has lost his right to possession. His right to possession has been "terminated by the lessor because of a breach of the lease [and] the lease terminates." Cal.Civ.Code § 1951.2(a). In an ensuing unlawful detainer proceeding, the court does not decide whether the lessor terminated the lease. That has already occurred. Instead, the court decides whether the termination was proper and if it was, the court grants the lessor a judgment for possession of the property. *See* Cal.Civ.Proc.Code § 1174(a). If the lessor's three-days' notice contained a forfeiture election, the lessor also is entitled to a judicial declaration of forfeiture and may immediately enforce the judgment for possession. *Id.* § 1174(c). If the lessor's notice did not elect a forfeiture, the lessor must wait five days from the entry of the judgment before the judgment for possession is enforceable, during which time the lessee may satisfy the judgment "and the tenant [shall] be restored to the tenant's estate." *Id.*

If the tenant should prevail in the unlawful detainer proceeding, this does not mean that the landlord did not terminate the lease in advance of the judgment. Rather, the judgment in favor of the tenant is a judicial determination that the termination was improper. A prevailing tenant who has remained in possession retains his leasehold estate and may have an action for damages for the lessor's breach of the covenants of quiet enjoyment and possession. *Guntert v. City of Stockton,* 55 Cal. App.3d 131, 138–40, 126 Cal.Rptr. 690, 693–94 (1976). A prevailing tenant who has moved out also may have an action for damages. *See Guntert,* 55 Cal.App.3d at 139, 126 Cal.Rptr. at 694; B. Witkin, *Summary of California Law, Real Property* § 575 (9th ed. 1987).

■ We hold that under California law a lease terminates for nonpayment of rent at least by the time the lessor files an unlawful detainer action, provided that a proper three-days' notice to pay rent or quit has been given, and the lessee has failed to pay the rent in default within the three-day period, and further provided that the lessor's notice contained an election to declare the lease forfeited. *See In re Escondido West Travelodge,* 52 B.R. 376, 379 (S.D.Cal. 1985).

### C. *Sufficiency of the Three-Days' Notice*

We have assumed for purposes of our discussion that Vanderpark's three-days' notice to pay rent or quit was properly given. It may not have been. The tenant was WFI. The three-days' notice was addressed to "Windmill Farms." Neither the bankruptcy court nor the BAP considered whether this notice was sufficient. In view of our decision, however, it is necessary for the bankruptcy court to address this question. Upon remand, the bankruptcy court should consider, among other things, whether under California law "Windmill Farms" was a sufficient designation of WFI, under the applicable facts which may be developed, to give WFI notice of its default under the lease. If the bankruptcy court concludes that Vanderpark's notice was insufficient under California law, then the notice would be ineffective and the lease would not have been terminated before WFI filed its Chapter 7 petition in the bankruptcy court. But if the bankruptcy court concludes that Vanderpark's three-days' notice was sufficient under California law, the court must then consider whether the trustee, Buchbinder, is entitled to relief from forfeiture of the lease.

### D. *Relief from Forfeiture*

Even though the lease may have been terminated before WFI filed its Chapter 7 petition in bankruptcy, the trustee may be

entitled to relief from forfeiture of the lease under California law. If so, the trustee's assumption of the lease would be proper. *See City of Valdez v. Waterkist Corp. (In re Waterkist Corp.),* 775 F.2d 1089, 1091 (9th Cir.1985).

■ Assumability of a lease by a trustee in bankruptcy, in the context of a lease termination claim, involves a two-part test. The first part of the test is to determine whether the lease terminated before the petition in bankruptcy was filed. *Id.* We have already discussed this. The second part of the test requires the court to "determine *whether the termination could have been reversed under a state anti-forfeiture provision or other applicable state law." Id.* (emphasis added). This second step in the analysis "permits the [trustee] the same opportunities to avoid forfeiture of a lease ... that it would have received under state law absent the bankruptcy proceedings." *Id.* (citing *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)). On remand the bankruptcy court should determine whether the lease, if validly terminated by Vanderpark, could have been saved from forfeiture by application of California Code of Civil Procedure section 1179, or any other antiforfeiture provision of California law.

### E. *Remaining Issues*

#### 1. *Ex Parte Proceeding*

Vanderpark contends the bankruptcy court erred when it consolidated the various Windmill Farms bankruptcy court proceedings and permitted assumption of the lease in an ex parte, as opposed to a regularly noticed, hearing; and that this error invalidates the trustee's assumption of the lease. We disagree.

#### a. Standard of Review

Under Rule 1015 of the Bankruptcy Rules, the bankruptcy court "while protecting the rights of the parties under the Code, ... may enter orders as may tend to avoid unnecessary costs and delay" when it enters an order for consolidation of a case. Fed.R.Bankr. 1015(c). A decision based upon considerations of "unnecessary costs

and delay" is inherently within the discretion of the bankruptcy court and is reviewable only for an abuse of discretion. As the Seventh Circuit has explained, the abuse of discretion standard

> is meant for the review of decisions that have one or more of the following characteristics: the factors that are supposed to dominate the decision cannot be evaluated by the reviewing court; the decision is supposed to be made on the basis of subjective rather than objective factors— the individual judgment of the judge ..., rather than some articulable legal standard; uniformity among decisions is not important.

*Mosey Mfg. Co. v. N.L.R.B.,* 701 F.2d 610, 615 (7th Cir.1983) (en banc); *see also N.L.R.B. v. State Plating & Finishing Co.,* 738 F.2d 733, 737 (6th Cir.1984) (endorsing *Mosey*'s abuse of discretion analysis). Decisions committed to the trial court's discretion, of course, are not unreviewable on appeal. Such decisions will be reversed if "based on an erroneous conclusion of law or when the record contains no evidence on which [the trial court] rationally could have based that decision." *Hill v. United States Immigration & Naturalization Serv. (In re Hill),* 775 F.2d 1037, 1040 (9th Cir.1985).

#### b. Analysis

■ As we noted in discussing the facts of this case, the bankruptcy court held an evidentiary hearing on September 27, 1985, to consider the ownership of the lease and Buchbinder's motion to assume the lease in his capacity as trustee for WFL # 1. Vanderpark participated in that hearing. The bankruptcy court denied the motion because it found that WFI was the lessee under the lease and WFI was not then a debtor before the court. At the September 27 hearing, the bankruptcy court also expressly rejected Vanderpark's argument that WFI was the alter ego of WFMC or WFL # 1. Furthermore, the bankruptcy court was aware that the expiration date for exercise of the option to renew the lease for an additional ten-year term was September 29, 1985.

Under these circumstances, we cannot say that the bankruptcy court abused its discretion in entertaining an ex parte motion to consolidate the cases and permit Buchbinder to assume the lease and exercise the lease option on the following Monday, September 30, 1985. Holding a full-blown evidentiary hearing would not have avoided unnecessary costs and delays. *See* Fed.R.Bankr. 1015(c). It would have increased them. Moreover, Vanderpark's counsel was given notice of the September 30, 1985 hearing, appeared at that hearing and was heard. The bankruptcy court did not abuse its discretion hearing the September 30th motions.

## 2. *Defaults Under the Lease*

At the time the bankruptcy court authorized the trustee to assume the lease, rent and other monetary defaults, including the failure to maintain insurance on the leased premises, remained uncured. Vanderpark argues that there also were additional uncured nonmonetary defaults consisting of failure to make repairs, abandonment of the lease, and an improper attempt to assign the lease.

As to the monetary defaults, the evidence before the bankruptcy court established that the trustee tendered a check to Vanderpark in satisfaction of these defaults, including reimbursement to Vanderpark of the costs of insuring the property. There is nothing in the record to suggest the check was not a sufficient tender to cure the defaults, yet Vanderpark refused to accept it.

■ When a party makes an unconditional offer to perform, coupled with the present ability to perform, and the party to whom the tender is made refuses to accept the tender, the "[t]ender gives a right to performance from the other party." *Guy F. Atkinson Co. of California & Subsidiaries v. Commissioner*, 814 F.2d 1388, 1393 (9th Cir.1987). By analogy to these general principles of contract law, when a trustee having the ability to perform, tenders payment of outstanding monetary defaults so that he may assume a lease, the lessor cannot prevent the assumption by refusing to accept the tender.

As to the claimed nonmonetary defaults, the Bankruptcy Code provides that a trustee may not assume a lease under which the debtor is in default, unless, at the time of the assumption, the trustee

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such ... lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such ... lease.

11 U.S.C. § 365(b)(1).

■ Buchbinder's original motion to assume the lease was made on behalf of WFL # 1, the entity he believed to be the lessee of the property. Vanderpark contested the assumption on two grounds; first it argued that WFL # 1 was not the lessee under the lease, and second, Vanderpark asserted the existence of the monetary defaults. After Buchbinder filed WFI's Chapter 7 petition and moved to assume the lease, the bankruptcy court permitted the assumption conditioned on the trustee's cure of all existing monetary defaults. Only when the trustee moved to sell the lease did Vanderpark belatedly raise its claim of nonmonetary defaults. As we read the record, the bankruptcy court found the alleged nonmonetary defaults were not of sufficient substance to preclude assumption of the lease. This finding is not clearly erroneous. Moreover, when the court approved the sale of the lease, it conditioned its approval upon the assurance of the assignee's future performance of all lease covenants.

We conclude that under these circumstances, the alleged monetary and nonmonetary defaults did not preclude the trustee's assumption of the lease.

## 3. *Timely Exercise of Option to Renew*

Vanderpark contends that the ten-year option to renew was not exercised timely.

It argues that the lease required notice of the exercise of the renewal option to be given on or before September 29, 1985, and Buchbinder did not request authority to exercise the option until he filed his ex parte motions on September 30, 1987. This argument lacks merit. Evidence presented to the bankruptcy court at the time of the September 30th hearing established that notice of the exercise of the option had been given by the lessee, WFI, on September 27, 1985.[3]

### 4. *Trustee's Timely Assumption of the Lease*

Finally, Vanderpark argues that even if the lease could have been assumed, the trustee, Buchbinder, failed to exercise his right to assume it in a timely manner. The Bankruptcy Code allows the trustee 60 days after the date the order for relief is granted in which to assume or reject a lease. 11 U.S.C. § 365(d)(4). It is uncontested that Buchbinder brought WFI's motion to assume the lease on the day that WFI filed its petition. This election to assume the lease was obviously timely. Vanderpark contends, however, that WFI was the alter ego of other Windmill Farms entities, and because of this, the 60–day period for assumption or rejection of the lease ran from the date the first bankruptcy court petition was filed involving a Windmill Farms entity. That date was April 10, 1985. We reject this argument. The bankruptcy court expressly found that WFI was not the alter ego of other Windmill Farms entities. This finding is not clearly erroneous. *See Wolfe v. United States*, 798 F.2d 1241, 1243 n. 2 (9th Cir.) (Because question of alter ego "is essentially factual, it is generally reviewed under the clearly erroneous standard."), *amended and reh'g denied*, 806 F.2d 1410 (1986), *cert. denied*, — U.S. ——, 107 S.Ct. 3210, 96 L.Ed.2d 697 (1987).

### III

### CONCLUSION

We reverse the opinion of the bankruptcy appellate panel. We remand this case to the bankruptcy court for further proceedings to enable it to make findings of fact and conclusions of law concerning whether the three-days' notice to pay rent or quit was properly given. If that notice was not a legally sufficient notice, properly given under California law, then the lease was not terminated before WFI filed its Chapter 7 proceeding, and the lease was assumable by the trustee in bankruptcy. If the three-days' notice was sufficient, then the lease was terminated before WFI filed its Chapter 7 bankruptcy petition and the trustee should not have been permitted to assume it, unless forfeiture of the lease may be avoided under California law. Entitlement to the contested proceeds from the sale of the lease will depend upon how the bankruptcy court resolves these questions.

REVERSED AND REMANDED.

---

**3.** We note, however, that if the lease had terminated by the time this notice was given, and if forfeiture of the lease cannot be avoided, the giving of the notice is irrelevant.