In re Sanya SMITH, aka Sanya Williamson, Debtor.

Mike MARQUAND, dba San Marcos Apartments, Movant,

v.

Sanya SMITH, aka Sanya Williamson, Respondent.

Bankruptcy No. LA 89–16152–VZ.

United States Bankruptcy Court, C.D. California.

Aug. 30, 1989.

Kevin L. Mello, Santa Ana, Cal., for movant.

Debtor, Sanya Smith, did not appear and was not represented by counsel.

I

INTRODUCTION

VINCENT P. ZURZOLO, Bankruptcy Judge.

Mike Marquand, dba San Marcos Apartments, ("Movant") filed and served a mo-

tion (the "Motion") pursuant to 11 U.S.C. § 362(d) for relief from the automatic stay provided by 11 U.S.C. § 362(a) (the "Stay"). In the Motion, Movant seeks an order relieving him of the Stay so he may enforce a "Judgment for Unlawful Detainer" (the "Judgment") obtained by Movant in the Municipal Court of the State of California, County of Los Angeles (the "State Court"). Movant obtained the Judgment in the State Court to regain possession of residential real property commonly known as 15238 Orange Avenue, No. 111, Paramount, California (the "Apartment"), from Sanya Smith ("Debtor"), the debtor in this Chapter 7 bankruptcy case.

The Motion is not unique or rare; I have heard over one hundred such motions in each month since April 1988 when I assumed the bench. With few and insignificant variations, these hundreds of motions involve facts identical to those I find below.

## II

## FACTS

On June 30, 1988, Debtor entered into an Apartment Rental Agreement (the "Rental Agreement") with Movant. Under the terms of the Rental Agreement, Debtor agreed to pay Movant $695.00 per month beginning on July 1, 1988. On or about June 1, 1989, Debtor failed to pay the agreed upon monthly rent to Movant. Thereafter, on June 10, 1989, Movant, served a Notice to Pay Rent or Surrender Possession of Premises pursuant to Cal. Code of Civ.Proc. § 1161. Debtor did not pay the overdue rent. Movant then filed a complaint for unlawful detainer in the State Court (the "Complaint") on June 30, 1989. Debtor did not appear or otherwise respond to the Complaint.

On July 17, 1989, the Judgment was awarded to Movant. Before Movant could enforce the Judgement to regain possession of the Apartment, Debtor filed her Voluntary Petition Under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court, Central District of California on July 28, 1989. Movant was the only creditor listed on Debtor's Bankruptcy Schedules.

On August 1, 1989 Movant filed the Motion. On August 3, 1989 Movant served notice of the Motion and the Motion on Debtor by United States Mail. The Motion was heard on August 30, 1989. Debtor did not appear at the hearing or file any type of opposition to the Motion.

## III

## THE PROLIFERATION OF "UNLAWFUL DETAINER" CASE FILINGS

More than 39,000 Chapter 7 bankruptcy cases are filed in the Central District of California annually.[1] A significant portion of these cases are apparently filed solely for the purpose of staying a residential landlord from dispossessing a debtor/tenant from a rented apartment or house. There is no exact count of these "unlawful detainer" cases pending in this district, but over the past several months, eighty percent of the motions for relief from Stay filed in Chapter 7 cases that I have heard involve residential unlawful detainer actions.

That these cases are filed solely for the purpose of staying enforcement of unlawful detainer judgments can be inferred from several facts: the commencement of the case by the filing of a "bare bones" petition without any schedules or statement of affairs ever being filed; the listing of no, few, or false creditors, if schedules are indeed filed; the failure of the debtor to appear at the mandatory section 341(a) meeting of creditors; and the refusal of debtors in these cases to comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or this court's Local Rules and thereby failing to obtain a discharge.

The debtor/tenant almost never appears at the hearing on the landlord/movant's motion for relief from the Stay. When a debtor/tenant does appear, I always inquire as

---

**1.** See "The Federal Judicial Workload Statistics," Dec. 1988 edition, Administrative Office of the United States Courts, Statistical Analysis and Reports Division.

52

to the purpose of the bankruptcy case filing. Invariably the debtor tells me that he or she filed in order to stay his or her eviction from residential real property.

## IV

### THE ROLE OF THE "BANKRUPTCY MILLS"

A principal, and perhaps the primary, reason for the proliferation of these unlawful detainer bankruptcy cases is the advice given to these debtor/tenants by some lawyers and many paralegals who are in business to advise low-income and legally unsophisticated individuals regarding the filing of bankruptcy cases.

Some of these lawyers and paralegals provide valuable services for reasonable compensation to those who are in financial distress and who seek the "fresh start" a Chapter 7 or Chapter 13 discharge provides. Unfortunately there are many others who mislead debtor/tenants into believing that filing a bankruptcy case will stay unlawful detainer evictions for an extended period of time and that no detrimental consequences will occur. These "bankruptcy mills" often take several hundreds of dollars in fees from debtor/tenants who cannot afford to pay rent in the first place.

Often these debtor/tenants are not advised that the filing of a bankruptcy case will have a deleterious effect on their credit records. In fact, many debtor/tenants who have appeared in my court have told me that these "bankruptcy mills" do not even disclose to these debtor/tenants that they were filing bankruptcy—rather, they are led to believe they are obtaining some appropriate form of legal relief in our legal system, which is all too often complex and intimidating to the lay-person.

Of course, not all of these debtor/tenants are innocent victims. Many have learned to manipulate the bankruptcy court system on their own, without the help of any of the "bankruptcy mills." These *pro se* debtor/tenants will often file not one, but two or more bankruptcies in order to delay improperly the enforcement of an unlawful detainer judgment. Landlords who have sought relief from the Stay before me have testified that some of these manipulative debtor/tenants have boasted that they can use (or misuse) the bankruptcy court system to delay the landlord's efforts to evict them for several months while paying no rent.

## V

### THE EFFECT ON BANKRUPTCY COURTS

As discussed in section III above, the bankruptcy courts in the Central District of California are flooded with Chapter 7 and Chapter 13 cases filed solely for the purpose of delaying unlawful detainer evictions. Inevitably and swiftly following the filing of these cases is the filing of motions for relief of the Stay by landlords who are temporarily thwarted by this abuse of the bankruptcy court system. Nearly every bankruptcy judge in the Central District of California allows residential landlords to seek relief from the Stay in these unlawful detainer bankruptcy cases on shortened notice.[2] Thus, contrary to the false representations made by the "bankruptcy mills," the debtor/tenants generally obtain only a brief respite from the consummation of the unlawful detainer evictions, after having paid hundreds of dollars to these mills.

The United States Trustee for the Central District of California has joined forces with the United States Attorney in an attempt to put these "bankruptcy mills" out of business.[3] These laudable efforts have met with little success. This is due to the ease with which operators of these bankruptcy mills can shuck one business identity, assume another, change location, and continue to defraud an unending supply of

2. *See Local Bankruptcy Practice Manual for the Central District of California,* (Professional Education Systems, Inc., 1989) pp. 366–367.

3. *See* Los Angeles Times, "Petition Mills Dupe Many Into False Bankruptcies," May 8, 1989, Sec. I, pp. 1, 23–24.

debtor/tenants and abuse the protection afforded by the Stay.

The Bankruptcy Court for the Central District of California is the busiest bankruptcy court in the nation, with over 50,000 bankruptcy case filings a year.[4] The mountain of paper work that accompanies the thousands of abusive "unlawful detainer" case filings places an unnecessary burden on our already overworked and undercompensated clerk's office. Of course this mountain of paperwork flows from our Clerk's Office to the chambers of our judges when landlords file their relief from Stay motions. Because of the increased workload caused by these blatantly abusive unlawful detainer case filings, our court has had to establish special procedures dismissing these cases as quickly as possible so that the court's dockets and the clerk's files will not become more choked with paperwork than they already are.

These relief from Stay motions are rarely contested and are never lost, as long as the moving party provides adequate notice of the motion and competent evidence to establish a *prima facie* case. Thus, bankruptcy courts in our district hear dozens of these Stay motions weekly, none of which involves any justiciable controversies of fact or law.

# VI

## THE SCOPE OF THE STAY

A. *Property of the Estate*

Section 362(a) provides in pertinent part:
[A] petition filed under Section 301, 302, or 303 of this title . . .

operates as a stay, applicable to all entities of . . .

(1) The commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debt-

or that arose before the commencement of the case under this title;

(2) *The enforcement*, against the debtor or *against property of the estate, of a judgment* obtained before the commencement of a case under this title;

(3) *any act to obtain possession of property of the estate*, or property from the estate, or to exercise control over property of the estate. . . . (Emphasis added.)

The term "property of the estate," as used in section 362(a), is defined in section 541(a)(1) to include:

[A]ll legal or equitable interests of the debtor in property as of the commencement of the case.

■ A bankruptcy court must look to state law to determine what "legal or equitable interests" the debtor had at the commencement of the case. *See Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Farmers Markets, Inc.*, 792 F.2d 1400 (9th Cir.1986); and *In re Schewe*, 94 B.R. 938 (Bankr.W.D. Mich.1989).

■ The United States Court of Appeals for the Ninth Circuit has interpreted California law as to whether a tenant retains any property interest once a lease has been terminated. In the case of *In re Windmill Farms, Inc.*, 841 F.2d 1467 (1988), the Ninth Circuit held that a lease of real property is terminated under California law when the lessor affirms his election to terminate the lease as expressed in a notice to pay rent or quit which the lessor has previously served upon the lessee. *Id.* at 1469–71. This affirmation of the termination of the lease by the lessor is usually accomplished by the filing of a complaint for unlawful detainer. Thus, if the lessor properly notifies the lessee of the lessor's intention to terminate the lease, the unpaid rent is not paid within the appropriate period of notice, and the lessor affirms his intention to terminate the lease by, at least, filing a complaint for unlawful de-

---

**4.** *See* "The Federal Judicial Workload Statistics," Dec. 1988 edition, Administrative Office of the United States Courts, Statistical Analysis and Reports Division.

tainer, the lease is terminated and the lessee retains no property interest with regards to the leased real property, except, perhaps, for one—the right to obtain relief from forfeiture of the lease under California Code of Civil Procedure § 1179.[5]

■ In this case, Debtor failed to pay her rent, Movant gave appropriate notice to Debtor of his intention to terminate Debtor's tenancy if she did not pay her overdue rent, Debtor failed to pay her overdue rent, and Movant affirmed his intention to terminate the tenancy by filing a Complaint. Further, Movant obtained the Judgment which declared his termination of Debtor's tenancy of the Apartment. Therefore it follows from the analysis presented in *Windmill Farms* that the bankruptcy estate of Debtor has absolutely no property interest in the Rental Agreement, or the tenancy it created, which was terminated prior to the commencement of this bankruptcy case. Debtor's retention of physical possession of the Apartment is not a property interest recognized by law.[6]

It is arguable that Debtor's bankruptcy estate does retain a property interest in the right to seek relief from forfeiture under Cal.Code of Civ.Proc. § 1179. No Chapter 7 debtor or trustee has ever sought to exercise this right in any of the residential unlawful detainer cases that I have heard. This is due to the fact that such tenancies

have absolutely no value to the bankruptcy estate and its creditors and that these unlawful detainer bankruptcy cases rarely, if ever, have any assets that would enable the bankruptcy trustee to fulfill the condition in Cal.Code Civ.Proc. § 1179 for relief from forfeiture—"full payment of rent due." That relief from forfeiture rights have no meaning in residential unlawful detainer cases is recognized in our Local Bankruptcy Rule 112(1)(a) which provides that the Chapter 7 trustee in such cases neither need be named as a responding party in, nor served with, motions for relief, from Stay to enforce unlawful detainer judgments against residential real property.[7]

Based upon the foregoing authorities, I conclude that neither Debtor nor the bankruptcy estate herein has any legal or equitable property interest in the Debtor's Rental Agreement or the Apartment due to the termination of Debtor's tenancy prior to the commencement of this bankruptcy case. Therefore, the Stay does not enjoin the Movant from taking any action to regain possession of the Apartment. As a result, it is not necessary for the Movant to obtain relief from the Stay in order to regain possession of the Apartment.[8]

**B.** *The Debtor*

■ It appears from the language of section 362(a)(2), quoted in section VI

---

**5.** In *In re Windmill Farms, supra* at 1469, the Ninth Circuit held that if a trustee was able to obtain relief from forfeiture of the lease pursuant to California Code of Civil Procedure, § 1179, then the lease would be "resurrected" and the bankruptcy estate would regain its property interest in the lease and the subject real property.

**6.** Many courts have held that actual, physical possession of premises subject to a month-to-month tenancy or lease does not constitute a legal or equitable interest in property within the meaning of section 541. *In re Kennedy,* 39 B.R. 995, 997 (C.D.Cal.1984); *In re Youngs,* 7 B.R. 69, 71 (Bankr.D.Mass.1980); *In re Depoy,* 29 B.R. 466, 470 (Bankr.N.D.Ind.1983).

**7.** Even if a trustee or debtor wished to obtain relief from forfeiture for a terminated residential lease, nothing in this opinion precludes either party from seeking such relief in the appropriate forum.

**8.** In some ways, the above analysis is analogous to the Bankruptcy Code's treatment of property that technically is property of the estate but which is of inconsequential value or benefit to the estate. Section 542(a) provides as follows:

An entity, other than a custodian, in possession, custody, or control, during the case, of properties that the trustee may use, sell, or lease under Section 363 of this title, or that the debtor may exempt under section 542 of this title, shall deliver to the trustee, and account for, such property or the value of such property, *unless such property is of inconsequential value or benefit to the estate.* (Emphasis added.)

If an entity has possession of property of the estate that is of inconsequential value or benefit to the estate, section 542 excuses that entity from turning it over to the trustee. Similarly, if a landlord seeks possession of residential real property that is no longer property of the estate, it does not follow that the Stay should enjoin the landlord from doing so.

above, that the Stay enjoins Movant from enforcing an unlawful detainer judgment against *Debtor,* even though the Stay does not prohibit Movant from regaining possession of the Apartment. I believe, however, that the only practical construction of 362(a)(1), (2) and (3) would be that these subsections operate to enjoin an entity from continuing an action or enforcing a judgment against a debtor that would either interfere with the administration of the bankruptcy estate or violate the discharge of debt which gives debtors a "fresh start," a goal sought by debtors who file bankruptcy in good faith.[9] For example, if a landlord, or any other creditor, attempted to enforce a judgment for money damages against the Debtor or the bankruptcy estate, 11 U.S.C. § 362(a)(2) would clearly enjoin such conduct.

As discussed above, those individuals who file bankruptcy cases to stay unlawful detainers usually do not seek a "fresh start" discharge of debt. They are only seeking to delay improperly the landlord from obtaining possession of his property. This delay provides no benefit to the bankruptcy estate or creditors of the estate.

The purpose of the Stay is to give the bankruptcy estate and its fiduciary, either the trustee or the debtor-in-possession, an opportunity to gather together the assets of the estate, determine their value, and liquidate or reorganize them. This goal of the Stay is not achieved by applying it to a landlord's attempt to regain possession of residential real property wrongfully being held by a debtor/tenant.

Instead, if the Stay is allowed to enjoin a landlord from completing a residential eviction, a completely different end is achieved—that of allowing unscrupulous manipulators, the "bankruptcy mills," to prey upon the desperate and ignorant tenants who come to them for help and are defrauded out of money which could better be used to pay rent to their current landlords or to obtain new living quarters.

Another consequence of holding that the Stay applies to residential unlawful detainer evictions is that the cost of doing business as a residential landlord rises with the additional expense of hiring lawyers not only to pursue an eviction in the state court but also to obtain relief from the Stay in Bankruptcy Court. This added cost necessarily increases the rent that must be paid by low-income tenants in the Los Angeles area, which is one of the most expensive urban rental markets in the country.[10] The ever increasing rents for low-income housing, of course, only makes it harder for tenants to pay their rent and therefore leads to more abusive bankruptcy filings.[11] Thus, this vicious cycle repeats and repeats.

■ Based upon the foregoing, I conclude that the Stay does not enjoin a landlord from regaining possession of residential premises from a wrongfully holding-over bankruptcy debtor/tenant, as long as the landlord seeks only to repossess the property and not to enforce any other portion of his unlawful detainer judgment against the debtor and the bankruptcy estate, such as collecting money damages.

## VII

## CONCLUSION

This opinion may be viewed by some as judicial legislation. I observe that this abuse of the bankruptcy court system has been communicated to Congress.[12] Congress has failed to address the problem, perhaps because landlords of residential real property do not have as loud a lobby-

---

9. H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 340–342 (1977), U.S.Code Cong. & Admin.News 1978 pp. 5787, 6296–6299 *reprinted in* King, Klee, and Levin, *Collier on Bankruptcy* (15th Ed.1988) Appendix 2.

10. *See* recent study done by Roulac Real Estate Consulting Group; Deloitte, Haskins & Sells and Institute of Real Estate Management, August 1989.

11. *See* Los Angeles Times, "Crowded Courtrooms Serve as Battleground for L.A.'s Eviction Wars," June 11, 1989, Part II, p. 1.

12. Letter of The Honorable Alan M. Ahart dated March 17, 1989, a copy of which is on file with this court.

ing voice as commercial landlords who have been able to effect large and significant revisions in the Bankruptcy Code in order to protect their interests. *See*, 11 U.S.C. § 365(b)(3) and § 365(c)(3) as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984.

I further observe that this opinion will have absolutely no effect on this problem unless residential landlords, and the attorneys who represent them, call it to the attention of the state courts that issue unlawful detainer judgments and convince those state courts to order the proper state law enforcement officials to evict debtor/tenants without first requiring residential landlords to obtain relief from the Stay. If this chain of events results, there is a chance that this wide-spread and daily abuse of the Bankruptcy Court system and the shameless defrauding of thousands of tenant victims will cease.

Based upon my conclusion that the Stay does not enjoin Movant from enforcing the Judgment, no order granting relief from stay is required.

Nevertheless, in the interests of justice, and to allow Movant to enforce the Judgment with no further delay, I hereby authorize Movant, to the extent that such authority is required, to enforce the Judgment to regain possession of the Apartment from Debtor.